[Civ. No. 9835. Third Dist. Aug. 18, 1960.]

NINA MADGE GALLOWAY, Appellant, v. HENRY FLORES MORENO, Respondent.

*Assigned by Chairman of Judicial Council.

Newman, Marsh & Furtado and Alvin J. Genini for Appellant.

Firth & Kohler for Respondent.

WARNE, J. pro tem.*—Appellant brought this action alleging that respondent was the father of her infant child, Mary Ann Galloway, and that Mary Ann was in need of support and maintenance. She prayed that respondent be ordered to pay a reasonable sum per month for the support of Mary Ann. The trial court sitting without a jury found

---

*Assigned by Chairman of Judicial Council.

that respondent was not Mary Ann's father nor was he required to support her. Appellant has appealed from the judgment.

It appears from the record that appellant has been married three times and has four children born in wedlock and also the child in this case which she claims was fathered by the respondent. Appellant testified that she met respondent on the last day of September, 1955, while she was still married to Richard Galloway. It is her testimony that she began having intimate relations with respondent on the first of October, 1955, and that from that date until February, 1956, she saw him continually and he slept at her house every night with the exception of one week in January, 1956. On February 15, 1956, appellant decided to leave Stockton and drive to the State of Washington where her husband was stationed to establish her residence for the purpose of obtaining a divorce from him. The respondent accompanied her as far as Salem, Oregon, and during the journey they spent one night in a motel. Appellant remained in the State of Washington from the 18th of February, 1956, until the end of April of that year. During this period respondent was not present and appellant lived with her husband. After learning that she would have to wait at least a year to obtain a divorce under the Washington law she returned to Stockton for a day and then went to Nevada where she remained until September 2, 1956. While there appellant worked for the State of Nevada, and on the above-mentioned date she left Nevada to meet the respondent in Columbus, Georgia, where he was employed. From April 30th to September 2, 1956, the appellant did not see the respondent but did see her husband once, although she denied she had any sexual relationship with him.

Upon reaching Georgia appellant contacted respondent and they again resumed their intimate relations. They left Georgia together on September 9, 1956, and returned to Nevada by car, stopping in various motels along the way. Respondent returned to Stockton on September 16th and appellant returned October 6th. Their relationship continued until December, 1956. During this period appellant informed the respondent that she was pregnant and that she believed he was the cause of her condition.

The child was born April 12, 1957, and it is appellant's contention that conception occurred September 8, 1956. If this be true, then the period of gestation was only 218 days, i.e., some 52 days short of the normal period. It is appellant's

further contention that she had a continued history of premature births. However the birth certificate showed that Richard Galloway was the father and that the last normal menses occurred July 12, 1957. This document also indicated that the child weighed 7 pounds 3 ounces and was some 19 inches long at birth.

The medical doctor, a specialist in surgery and obstetrics who gave appellant prenatal care and also delivered the child, testified that appellant told him when he first saw her that the date of the beginning of her last menstrual period was July 8, 1956, and that during the latter part of her pregnancy he determined that conception must have occurred some time near the 20th or 25th of July. It was his opinion that it could not have taken place on September 8th. He further doubted that a child as well developed at birth as the appellant's could have been some 52 days premature; that there was nothing about the child to indicate that it could have been premature; and that its weight, general appearance, length and strength of its cry all indicated that it was a full-term baby.

The evidence viewed in the light most favorable to the respondent amply supports the trial court's findings and judgment.

Appellant attempted to explain away her inconsistent statements concerning the paternity of the child as having been made for the purpose of obtaining free medical care from the United States Government as the wife of one then in the armed service. Obviously, the trial court did not believe her. The weight and effect of the evidence was, of course, a matter for the trial court to determine and it is binding upon this court. (*Schuster* v. *Schuster,* 150 Cal.App.2d 650 [310 P. 2d 481].)

Appellant also contends that she was deprived of a fair trial. She assigns as error several matters which, even if we assume error for the sake of argument, were obviously not prejudicial to her cause. For instance, appellant contends that certain questions asked her on cross-examination were asked for the purpose of besmirching her character and that it was her right under the provisions of section 2066 of the Code of Civil Procedure to be protected from such treatment. The questions asked related to her previous marriages, one of which was apparently illegal under the laws of this state, but none of which (taking her testimony as true) reflected upon her character for chastity. No objections to the questions were made by her counsel, and, in any event, in view of her allega-

tions of sexual relations with respondent (relations which were both adulterous and criminal), we do not believe that the questions relating to her prior marriages could have in any degree influenced the trial court in this particular action.

Appellant also contends that the results of certain blood tests should have been admitted into evidence. This contention is without merit since the record shows that appellant did not even offer them into evidence.

Appellant also claims that the trial judge's remarks indicating that too much time was being taken for the trial of the case prevented her from having a fair trial in that she was denied a full and fair opportunity to present competent, relevant and material evidence. We have examined the record and have concluded that appellant's assertion is not true. The purport of the trial court's remarks constituted no more than a desire of the court to keep the trial moving and to avoid unnecessary delay. (*People* v. *Daily,* 157 Cal.App.2d 649, 657 [321 P.2d 469].) Similar statements which went beyond the statements objected to in this case have been held nonprejudicial. (*Bates* v. *Newman,* 121 Cal.App.2d 800, 810 [264 P.2d 197] ; *Seidenberg* v. *George,* 76 Cal.App.2d 306, 309 [172 P.2d 891].) Furthermore, counsel did not object to the remarks at the trial, hence his right to review the point on appeal is lost. (*Estate of Golden,* 4 Cal.2d 300 [48 P.2d 962].)

Next appellant asserts that at various times her testimony was not heard by the court and counsel and that deprived her of a fair trial. While the record indicates that there was some difficulty during the trial with a microphone into which the witnesses spoke, appellant's counsel nevertheless at no time objected to proceeding with the trial under such circumstances, nor did he ask for a continuance until the trouble could be remedied. We are satisfied from the reading of the entire record that the court fully understood the issues of the case and heard the testimony of the witnesses, including that of appellant.

Appellant also contends that the trial court committed reversible error by excluding evidence offered by appellant as to a history of premature births and that the trial court should have taken judicial notice of the common medical fact that a woman who has a history of premature births will frequently have subsequent premature births. While we find it stated in medical texts that prematurity is frequently repeated in a subsequent birth (Nesbitt, Obstetrics & Gynecology (1957), p. 61), this does not necessarily indicate that

subsequent births would be premature. Appellant's obstetrician testified that while there would be a possibility of subsequent premature births where there was such a history yet it was not necessarily a probability. Hence it follows that evidence of premature births would not have tended to prove or disapprove whether the child in question was prematurely born. Further, the subject matter being one of uncertainty and disputable, it was not a matter of which the court could properly take judicial notice. ■■■ As stated in *Varcoe* v. *Lee*, 180 Cal. 338, 345 [181 P. 223]:

" ' . . . 1. The matter of which a court will take judicial notice must be a matter of common and general knowledge. The fact that the belief is not universal, however, is not controlling, for there is scarcely any belief that is accepted by everyone. Courts take judicial notice of those things which are common knowledge of the majority of mankind, or to those persons familiar with the particular matter in question. ■■■ But matters of which courts have judicial knowledge are uniform and fixed, and do not depend upon uncertain testimony; *as soon as a circumstance becomes disputable, it ceases to fall under the head of common knowledge, and so will not be judicially recognized.* ■■■ 2. A matter properly a subject of judicial notice must be "known," that is, well established and authoritatively settled, not doubtful or uncertain. In every instance the test is whether sufficient notoriety attaches to the fact involved as to make it safe and proper to assume its existence without proof. In harmony with that view it has been said that courts must "judicially recognize whatever has the requisite certainty and notoriety in every field of knowledge, in every walk of practical life." ■■■ 3. A matter to be within judicial cognizance must be known "within the limits of the jurisdiction of the court." ' ' [Emphasis added.]

" . . . . . . . . . . . . .

■■■ " . . . If there is any doubt whatever either as to the fact itself or as to its being a matter of common knowledge evidence should be required. . . ."

■■■ Applying the rules of law as stated in *Varcoe* v. *Lee*, *supra*, to the evidence presented in this case, it becomes obvious that the trial court did not err when it excluded the birth certificates of appellant's other children which we will assume were prima facie evidence of previous premature births.

■■■ Lastly, appellant contends that the trial court committed prejudicial error by allowing respondent to invoke the

privilege against self incrimination as to certain questions propounded to him. Appellant's counsel called respondent as a witness under the provisions of section 2055 of the Code of Civil Procedure and attempted to question him about sexual intercourse with the appellant during two periods of time. The first questions related to a period between October, 1955, and February, 1956, when both parties were residing in California. Respondent was asked if it was a fact that during that period of time he frequently had sexual intercourse with the appellant. Objection was made to the question on the ground that the answer might tend to incriminate him. Assuming that this was true, it would at most have been incrimination of the commission of a misdemeanor (adultery). (Pen. Code, § 269a.) Section 2065 of the Code of Civil Procedure provides in part: "A witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for a felony; . . ." Under this section of the code the objection to the above question should have been overruled and the respondent directed to answer. However, the ruling did not amount to prejudicial error since the question did not relate to the period of time when appellant claims she became pregnant.

As to those questions relating to acts of sexual intercourse between the parties while they were traveling from state to state, respondent had the right to refuse to answer because of possible self incrimination under the Mann Act, a federal felony (18 U.S.C.A., § 2421), the trial court properly granted respondent the protection of section 2065 of the Code of Civil Procedure.

The judgment is affirmed.

Schottky, J., concurred.