[No. A046913. First Dist., Div. Two. Mar. 12, 1991.]

TANJA H., Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

COUNSEL

Tesler & Sandmann, Pauline H. Tesler and Eve T. Contente for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, Peter W. Davis, Ned N. Isokawa, Joseph P. Mascovich and Howard A. Janssen for Defendants and Respondents.

## OPINION

**PETERSON, J.**—Appellant Tanja H. contends respondents, a university and its officials, are liable because appellant's fellow students raped her in a university dormitory after a party. Despite the outrageous and reprehensible conduct of the perpetrators, we must affirm the trial court's action in dismissing appellant's claims against respondents, the university and its officials. A university is not liable as an insurer for the crimes of its students.

### I. FACTS AND PROCEDURAL HISTORY

For purposes of this appeal, we assume the truth of the facts as appellant has pleaded them; they do not portray activities at an elite institution of higher learning in a favorable light.

Appellant was a young person in her first year of college in September of 1986; she had been assigned to live in a dormitory in the Clark Kerr Campus of the University of California at Berkeley. Despite university regulations forbidding the use of alcohol by minors in university dormitories, and the requirement that students residing in dormitories sign an agreement to abide by this policy, there were parties in appellant's building where appellant and other students did substantial drinking. University officials or residence hall staff stopped some parties where persons under 21 had access to liquor, but not all of them. After one such party where appellant and other partygoers drank alcohol unhindered by university employees, she walked to the room of an acquaintance, Donald, at around midnight to borrow a cassette tape. She encountered Donald's twin brother, Ronald, who made sexual overtures. Appellant decided she wanted to go back to her own room. Ronald, however, forced appellant down the interior stairs of the building, to a dark landing where a light bulb had been shattered; Ronald forced appellant to orally copulate him and have intercourse with him.

Ronald then took appellant to a room occupied by John and Christian, where appellant's friend Donald soon joined them. Appellant said she was upset and wanted to go back to her own room. Donald suggested they go to his room instead, and appellant agreed.

At Donald's room, appellant was compelled to orally copulate Ronald, John, and Christian; appellant's friend Donald encouraged this. When appellant became more forceful in asserting her lack of consent, Donald told the others to leave but told appellant that if she didn't stop yelling he would beat her. Donald then forced appellant to have intercourse with him. Donald's friends reentered and watched, laughing. Appellant was then permitted to leave.

The four perpetrators were all members of the university football team and were much stronger, bigger, and heavier than appellant. Appellant was intimidated by them and feared they would harm her further if she did not comply with their demands.

In September 1987, exactly one year after these events, appellant filed an action asserting numerous tort claims against the four perpetrators and against respondents, the Regents of the University of California and various university officials. She retained new counsel and filed an amended complaint in December 1988; her second amended complaint, which is in issue here, was filed in March 1989.

In May 1989, respondents filed a demurrer. After opposition and hearing, the trial court granted the demurrer as to respondents without leave to amend and entered a judgment of dismissal, from which this appeal proceeds.

## II.  DISCUSSION

■ Relevant authority indicates universities are not generally liable for the sometimes disastrous consequences which result from combining young students, alcohol, and dangerous or violent impulses.

In *Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275 [176 Cal.Rptr. 809], the plaintiff was a young student at a state university. She became a quadripleg-ic in an auto collision which occurred when other inebriated, underage students engaged in an auto race after drinking on campus. (*Id.* at p. 279.) Despite the egregious misconduct of the plaintiff's fellow students—and the terrible nature of her injuries, the Fifth District concluded the university was not legally responsible. "Since the turbulent '60s, California colleges and universities have been in the forefront of extension of student rights with a concomitant withering of faculty and administrative omnipotence. Drug use has proliferated. Although the consumption of alcoholic bever-ages by persons under 21 years of age is proscribed by law [citation], the use of alcohol by college students is not so unusual or heinous by contemporary standards as to require special efforts by college administrators to stamp it out. Although the university reserved to itself the right to take disciplinary action for drinking on campus, this merely follows state law. [Citation.] The same may be said of the [dormitory rental] agreement prohibiting alcoholic beverages. We do not believe they created a mandatory duty." (*Id.* at p. 288.)

In the recent case of *Crow* v. *State of California* (1990) 222 Cal.App.3d 192 [271 Cal.Rptr. 349], the plaintiff was another student at a state universi-ty, and was badly beaten by a member of the football team whose violent propensities were apparently activated by alcohol served at a dormitory party. The Third District agreed with the Fifth that the university would not be liable for such a student's attack on another student, observing that the "distinction between young, immature schoolchildren in grammar and high schools on the one hand and adult students in colleges and universities on the other was highlighted in *Baldwin* v. *Zoradi* . . . ." (*Id.* at p. 209.) "The [*Baldwin*] court held that the relationship between the trustees and the university students did not create a special relationship imposing a duty of care to prevent the injuries sustained by plaintiff." (*Ibid.*)

College students are generally young adults who do not always have a mature understanding of their own limitations or the dangers posed by alcohol and violence. However, the courts have not been willing to require college administrators to reinstitute curfews, bed checks, dormitory searches, hall monitors, chaperons, and the other concomitant measures which would be necessary in order to suppress the use of intoxicants and protect students from each other. "Given these realities of modern college life, the university does not undertake a duty of care to safeguard its students from the risks of harm flowing from the use of alcoholic beverages . . . . Moreover, imposition of such a duty would be unwarranted and impracticable . . . . We agree with the assessment of [the university] that it could 'not have prevented this [violent] incident from taking place except *possibly* by posting guards in each dorm room on a 24-hour, 365-day per year basis.' (Italics in original.) All these factors militate against the imposition of a legal duty upon [the university] under these circumstances." (*Id.*, 222 Cal.App.3d at p. 209; accord, *Bradshaw* v. *Rawlings* (3d Cir. 1979) 612 F.2d 135, 138 ["Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students."].)

In this respect, a university in its residual role as the operator of a dormitory used as living quarters by students is more akin to an innkeeper, who does not have a duty to search guests for contraband, separate them from each other, or monitor their private social activities. (*Gray* v. *Kircher* (1987) 193 Cal.App.3d 1069, 1075 [236 Cal.Rptr. 891].) As campuses have, thus, moved away from their former role as semimonastic environments subject to intensive regulation of student lives by college authorities, they have become microcosms of society; and unfortunately, sexually degrading conduct or violence in general—and violence against women in particular— are all too common within society at large. College administrators have a moral duty to help educate students in this respect, but they do not have a legal duty to respond in damages for student crimes.

We agree with appellant that it may be—in some sense not relevant here—foreseeable that a group of football players could rape a fellow student after a party where alcohol was served. The problem of gang rape, rape by acquaintances, and alcohol abuse on campuses is heinous. It is also foreseeable that there will always be criminals among us. The relevant issue here, however, is the one posed by the courts in *Baldwin, Crow,* and *Bradshaw*: Should a duty be imposed which would make colleges liable for damages caused by third parties, unless colleges impose onerous conditions on the freedom and privacy of resident students—which restrictions are incompatible with a recognition that students are now generally responsible for their own actions and welfare? We note in this context it has even been held by one court that university officials cannot interfere with the private

lives of students in order to prevent illegal substance abuse. (Cf., e.g., *Hill* v. *National Collegiate Athletic Assn.* (1990) 223 Cal.App.3d. 1642 [273 Cal.Rptr. 402], review granted Dec. 20, 1990 (S018180) [University officials could not enforce a testing program in order to prevent substance abuse among college athletes, due to the privacy guaranty of the California Constitution.].) In these circumstances, the courts can establish the criminal and civil liability of the perpetrators of crimes; but the courts with good reason have been unwilling to shift moral and legal responsibility away from student perpetrators and onto the heads of college administrators.

Appellant also attempts to assert a claim based in part upon a premises liability theory: She claims respondents are liable for the rapes because there was a shattered light bulb on a landing in the stairwell. We can certainly agree respondents might be liable if appellant had stumbled in a darkened stairway, or even if she had been assaulted by someone lying in wait in the darkness. (Cf. *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 812-813 [205 Cal.Rptr. 842, 685 P.2d 1193] [A college might be liable for a sexual assault where untrimmed foliage around a stairway allowed an assailant to lie in wait for victims.].) However, there was no meaningful causal connection here between failing to more quickly fix a shattered light bulb and the sexual assault which began in one dormitory room, continued on the landing, and continued in two other rooms. No assailant was lurking in the dark; appellant's attackers were acquaintances she first encountered in their lighted rooms, where they overcame her resistance. As a matter of law, respondents' alleged failure to fix a light bulb on the stairs was not the legal cause of the assault on appellant. (Cf. *Constance B.* v. *State of California* (1986) 178 Cal.App.3d 200, 212 [223 Cal.Rptr. 645] ["If we are unwilling as a matter of policy to insure against losses occasioned by crimes, we ought not foist that burden haphazardly on persons not at fault for criminal misbehavior. We conclude that the lighting condition was not a proximate cause of the assault."].)

In connection with her premises liability allegations as to the shattered light bulb, appellant also contends that respondents violated express or implied promises concerning the safety and security of the dormitory premises. However, again, it was not the lack of safe illumination on the stairs, or the lack of security from outside intruders, which caused appellant to be assaulted by acquaintances. (See 178 Cal.App.3d at p. 212.)

Further, on appeal, appellant attacks the university for allowing males, including football players, and females to have their rooms on the same floor of the dormitory; she contends that dorms which have coed floors are more likely to be the sites of sexual assaults by students. This propinquity

argument fails, however, because (1) no court has held that a university has a legal duty to segregate students in dormitories, according to their sex or any other personal characteristic; and (2) in this specific case, segregation by floor would plainly not have helped. Appellant's assailants obviously knew how to use the stairs; appellant could just as easily have gone to her friend's room where the assaults began if the room had been on another floor; and there was no meaningful causal connection between the assaults and the layout of the premises.

While appellant also cites in her appellate brief certain statistics which appear to show that the problem of rape by acquaintances is widespread on college campuses, those statistics certainly do not show that rapes are caused by shattered light bulbs or any particular method of room assignments; they would seem to show that the problem is so widespread that it cannot properly be related to any particular campus, living situation, or degree of illumination.[1]

Appellant's inventive arguments for the imposition of vicarious liability on respondents for the actions of students also fail to acknowledge the force of existing contrary authorities. In *Baldwin* v. *Zoradi, supra*, the plaintiff had alleged, as here, that a university was liable because it had a policy against the consumption of alcohol by minors, required residents of dormitories to sign an agreement to abide by this policy, and told dormitory staff to enforce the policy. (123 Cal.App.3d at pp. 279-280, 284-285, 295-300.)

The plaintiff in *Baldwin* further argued that the university's efforts to lessen the problem of underage drinking on campus meant the university was liable for her crippling injuries in an auto accident, which occurred after students became drunk on campus; but the *Baldwin* court disagreed: "We do not believe [these university actions] created a mandatory duty. As

---

[1] Further, quite aside from the fact that it is unclear why these statistics would support the imposition of liability on the university for having students of both sexes in proximity on its premises, these statistics also would not be the proper subject of our judicial notice in any event, since it is impossible for us to determine their scientific validity or relevance. (See *Galloway* v. *Moreno* (1960) 183 Cal.App.2d 803, 808-809 [7 Cal.Rptr. 349] [proper to refuse judicial notice of debatable statistical evidence regarding premature births]; *Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94, 101-102 [100 Cal.Rptr. 73, 47 A.L.R.3d 742] [refusing to take judicial notice of alleged scientific principle gleaned from selected medical and statistical studies, to the effect that the use of marijuana causes no ill effects on the human body]; *Whispering Pines Mobile Home Park, Ltd.* v. *City of Scotts Valley* (1986) 180 Cal.App.3d 152, 162 [225 Cal.Rptr. 364] [declining to take judicial notice for the first time on appeal of the contents of certain treatises on appraisal practices, since "we have no way of knowing if they are indisputably accurate sources"].)

stated in *Bradshaw* v. *Rawlings, supra,* 612 F.2d at page 141: '[Plaintiff] has concentrated on the school regulation imposing sanctions on the use of alcohol by students . . . . We are not impressed that this regulation, in and of itself, is sufficient to place the college in a custodial relationship with its students for purposes of imposing a duty of protection in this case . . . . A college regulation that essentially tracks a state law and prohibits conduct that to students under twenty-one is already prohibited by state law does not, in our view, indicate that the college voluntarily assumed a custodial relationship with its students so as to [impose a duty of protection].' " (123 Cal.App.3d at p. 288.)

More recently, in *Crow* v. *State of California, supra,* the plaintiff alleged the university was liable because, in derogation of its duty to maintain its dormitory in safe condition, it allowed a student football player to enter the dormitory for a party, where he became inebriated and attacked the plaintiff. (222 Cal.App.3d at pp. 204, 197.) Relying on *Baldwin, supra,* 123 Cal.App.3d 275, and *Bradshaw, supra,* 612 F.2d 135, the Third District held the university was not vicariously liable for the assault by one student upon another, under any state of facts. "[S]ince the flaws in plaintiff's theories—the lack of a dangerous condition of public property or special relationship imposing a duty—cannot be cured, there was no abuse of discretion in denying the plaintiff a continuance for further discovery." (*Id.* at pp. 209-210.)

Even more recently, this court (Division Two) in analogous circumstances resisted similar inventive arguments in favor of the imposition of vicarious liability or premises liability for an assault by a third party: "To hold as appellant urges in this case would simply improperly impose a remote and insubstantial factor, or a cause out of natural and continuous sequence, as the legal basis for recovery . . . . We find no reason of precedent or policy justifying such unwarranted extension of vicarious tort liability." (*Martinez* v. *Pacific Bell* (1990) 225 Cal.App.3d 1557, 1569-1570 [275 Cal.Rptr. 878].)

We conclude the trial court correctly sustained the demurrer of respondents, since they were not bound by a legal duty which would make them responsible here for the crimes of students. Our resolution of the appeal on these grounds makes it unnecessary for us to address the other basis of respondents' demurrer: the asserted lack of timeliness of the amended claims against respondents. If we were to address this contention, we would likely reject it. The claims asserted in the amended complaint were sufficiently closely related to the claims in the original timely complaint, and concerned the same general set of facts, so that the doctrine of relation

back would apply. (*Smeltzley* v. *Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 940 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121].)

However, even though the claims against respondents may be timely, the trial judge acted correctly when she sustained their demurrer. (See *Wise* v. *Superior Court* (1990) 222 Cal.App.3d 1008, 1013 [272 Cal.Rptr. 222] ["A complaint which lacks facts to show that a duty of care was owed is fatally defective."].)

III.  DISPOSITION

The judgment of dismissal is affirmed.

Benson, J., concurred.

**KLINE, P. J.,** Concurring.—"[A]n indispensable factor to liability founded upon negligence is the existence of a duty of care owed by the wrongdoer to the person injured . . . ." (*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 491 [127 P.2d 1, 149 A.L.R. 215].) I concur with my colleagues that there is no duty in this case chiefly because I do not believe University of California (the University) placed plaintiff in a position of danger or materially contributed to the harm she suffered; nor do I believe the University should reasonably have anticipated plaintiff would rely on it to protect her against the harm she suffered.

In seeking to establish a duty, plaintiff emphasizes that the University either knew or should have known of the high risk of sexual assaults upon its female students. In her brief she sums up her contention as follows: "[T]he information available to respondents at or about the time plaintiff was raped, in mass media, social science research, and professional educators' publications, reveals that by the early to mid-1980's, the danger to young women in plaintiff's position of precisely the injury she alleges—gang rape by male student acquaintances—had been clearly documented in publications of which respondents could not reasonably have been unaware."[1]

---

[1] My colleagues are unwilling to take judicial notice of these numerous studies and articles because "it is impossible for us to determine their scientific validity or relevance." (Maj. opn., *ante*, at p. 440, fn. 1.) I do not share this concern. Plaintiff claims the academic studies and other reports showing high levels of sexual violence on campus were so numerous that university administrators could not claim this danger was unforeseeable, entirely apart from the "scientific validity" of any particular study. Furthermore, defendant University has not claimed that any of the cited studies are scientifically invalid or factually misleading.

It is indisputable that a large body of recent empirical studies documents an alarming level of sexual assaults against female students at American colleges and universities. In one of the most impressive studies, based on a national sample of 6,159 male and female students enrolled in 32 institutions of higher education across the United States, 12.1 percent of the women respondents said they had been the victim of at least 1 attempted rape; 15.4 percent said they actually had been raped; and 53.7 percent said they had experienced some form of "sexual victimization." (Koss et al., *The Scope of Rape: Incidence and Prevalence of Sexual Aggression and Victimization in a National Sample of Higher Education Students*, 55 J. of Consulting & Clinical Psych. 162, 166 (1987).) Other studies report similar findings. (See, e.g., Rapaport & Burkhart, *Personality and Attitudinal Characteristics of Sexually Coercive College Males*, 93 J. of Abnormal Psych. 216, 220 (1984); Lott et al., *Sexual Assault and Harassment: A Campus Community Case Study*, 8 Signs: J. of Women in Culture & Society 296, 306 (1982); Fenstermacher, *Acquaintance Rape on Campus: Responsibility and Attributions of Crime*, in Pirog-Good & Stets (edits.) Violence In Dating Relationships: Emerging Social Issues, at pp. 257-271 (1989).)

However, none of the studies just cited, nor others brought to our attention by plaintiff, suggest that the incidence of sexual assault occurring on college and university campuses is any different from that occurring elsewhere in American society or that female college or university students are a particularly vulnerable group because they reside on or near a campus or due to the consumption of alcohol in campus dormitories. The reason many studies of the prevalence of rape and other forms of sexual aggression have involved college students is simply because they are an available sample "in the same age range as the bulk of [all] rape victims and offenders. The victimization rate for women peaks in the 16-19 year-old age group, and the second highest rate occurs in the 20-24 year-old age group. The victimization rates for these [age] groups are approximately 4 times higher than the mean for all women. Also, 45% of all alleged rapists who are arrested are individuals under age of 25." (Koss et al., *The Scope of Rape, supra*, 55 J. of Consulting & Clinical Psych. at p. 163, citations omitted.)

Appallingly, sexual aggression is endemic throughout our society. Finding that "the locus of violence against women rests squarely in the middle of what our culture defines as 'normal' interaction between men and women," one study asserts that "the average American woman is just as likely to suffer a sexual attack as she is to be diagnosed as having cancer, or to experience a divorce." (Johnson, *On the Prevalence of Rape in the United States*, 6 Signs: J. of Women in Culture & Society 136, 146 (1980), see also, Brownmiller, Against Our Will: Men, Women and Rape (1975); Katz &

Mazur, Understanding the Rape Victim: A Synthesis of Research Findings (1979).)

This information is of no assistance to plaintiff. While the studies she relies upon show that women her age are particularly vulnerable to sexual assault, they establish no connection between sexual violence and the conduct of university administrators (or other landlords); indeed, the empirical data strongly suggests there is *no such connection.*

Nor do the studies or any other evidence provide reason to think university students are unaware of the risk of sexual violence on campus and elsewhere or that they rely for protection on university administrators. To suppose that it is *uniquely within the power of campus officials* to diminish this risk would not only exaggerate their abilities but trivialize the problem.

Though it involved a cause of action for a dangerous condition of property under Government Code section 835, and a different type of premises, *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855] is nonetheless relevant. In that case, two youths were attacked and beaten by unknown third persons while asleep at night on a beach on the campus of the University of California at Santa Barbara. A unanimous Supreme Court found the Regents of the University and other government defendants were under no duty to warn against criminal conduct. The court acknowledged "that the warning called for by plaintiffs might be beneficial in some instances . . . ." (*Id.,* at p. 472, fn. omitted.) But because of "public awareness of the prevalence of crime and policy factors," the court believed "it would serve little purpose for government to further remind the public of this unfortunate circumstance in society." (*Id.,* at p. 473.) The court also felt that warning of the danger of criminal conduct on university premises—"unlike cautioning against a specific hazard in the *use* of property—admonishes against any use of the property whatever, thus effectively closing the area." (*Ibid.,* italics in original.)

As explained in the majority opinion, plaintiff's premises liability theory is untenable. Therefore, like *Hayes,* the present case is distinguishable from cases, such as *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799 [205 Cal.Rptr. 842, 685 P.2d 1193], where the duty to warn was imposed in connection with "physical defects" of property that increased the risk of crime. (*Id.,* at p. 813; see also *Kenny* v. *Southeastern Pennsylvania Transp.* (3d Cir. 1978) 581 F.2d 351, cert. den. 439 U.S. 1073 [59 L.Ed.2d 39, 99 S.Ct. 845].) It is also different from cases in which the landlord had notice of repeated criminal assaults in the particular building

in which the plaintiff resided and of the likelihood of repeated attacks, and took no precautions to protect his tenants or concealed the problem. (See, e.g., *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 802 [142 Cal.Rptr. 487]; *Kline* v. *1500 Massachusetts Avenue Apartment Corp.* (D.C. Cir. 1970) 439 F.2d 477, 479, 481.)

Absent a special relationship, a person who has not created a peril may not be held liable for failure to protect against it. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].) Nor can the University be said to be under a legal duty to protect plaintiff from harm simply because it adopted a policy forbidding the consumption of alcohol in its dormitories and took some uneven action to enforce that policy. (See Seavey, *Reliance Upon Gratuitous Promises or Other Conduct* (1951) 64 Harv. L. Rev. 913, 918, 919, fn. 24 ["a gratuitous promise should not acquire validity merely by partial performance."]

Plaintiff has not only failed to establish a close connection between the university's conduct and the injury suffered by plaintiff, which is a factor bearing upon the existence of the asserted "duty" (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]), but she ignores the legal significance of the fact that the conduct she complains of constitutes a nonfeasance rather than a misfeasance. Where, as here, the defendant's conduct made the plaintiff's situation no worse, and merely failed to benefit her by interfering in her affairs, liability is imposed only where the defendant possesses considerably more power over the plaintiff's welfare than is evident here. (Prosser & Keeton, Torts (5th ed. 1984) pp. 373-374; Harper & Kime, *The Duty to Control the Conduct of Another* (1934) 43 Yale L.J. 886; Bohlen, *The Moral Duty to Aid Others as a Basis of Tort Liability* (1908) 56 U. Pa. L. Rev. 217, 219.)

Plaintiff has also oversimplified the issue of foreseeability. The question in this case is not simply whether sexual violence on campus was foreseeable—which I think must be conceded—but whether plaintiff's reliance on the ability of the University to protect her against sexual assault was both reasonable and foreseeable and whether the University should also have foreseen an unreasonable likelihood of harm as a result of such reliance, if the University's promise to supervise student conduct in the dormitory was not carried out. Plaintiff does not satisfactorily address these requirements. For example, in connection with the element of reliance, she does not allege what precaution she would otherwise have taken to prevent the sexual assaults she experienced, which, as indicated, are not confined to University premises.

The imposition of a duty to exercise care with resulting liability for breach would hold the University liable for a risk it neither created nor exacerbated nor can readily abate. As my colleagues point out, such a duty cannot be imposed without resurrecting the university's role of in loco parentis, which is no longer feasible, even accepting the doubtful assumption it would be wise. (*Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275, 287-288 [176 Cal.Rptr. 809]; *Bradshaw* v. *Rawlings* (3d Cir. 1979) 612 F.2d 135, 138-140.)

For the foregoing reasons, in addition to those set forth in the majority opinion, I agree that the judgment below should be affirmed.