**Joseph P. MOTZ, Delta Tau Delta, Beta Alpha Chapter and Delta Tau Delta, National Fraternity, Appellants–Defendants,**

v.

**Tracey D. JOHNSON, Appellee–Plaintiff.**

No. 49A02–9405–CV–249.

Court of Appeals of Indiana.

June 12, 1995.

Douglas B. King, Michael Rabinowitch, Wooden, McLaughlin & Sterner, Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for appellants.

Ronald E. Elberger, C. Joseph Russell, George T. Patton, Jr., Scott A. Weathers, Bose, McKinney & Evans, Indianapolis, for appellee.

## OPINION

BAKER, Judge.

The appellants-defendants Delta Tau Delta, Beta Alpha Chapter (local chapter) and Delta Tau Delta, National Fraternity (national fraternity) appeal the trial court's denial of their respective motions for summary judgment in the negligence and dram shop actions filed against them by appellee-plaintiff Tracey D. Johnson.

### FACTS

On October 13, 1990, Johnson attended a Homecoming party at the Delta Tau Delta fraternity house located on the Indiana University campus in Bloomington. Johnson, who was a freshman at Indiana University, attended the party with a few of her female friends at the invitation of William Loudermilk, an undergraduate member of the local chapter. While at the party, Johnson talked with friends and drank a few glasses of beer, which was the only type of alcoholic beverage provided by the local chapter. The beer, which was dispensed out of a keg into pitchers, was served in the courtyard area by the local chapter's pledges who then poured the beer into plastic glasses.

Motz, an alumni member of the local chapter, also attended Homecoming. Motz, who drove from his home in Greenwood, met his friend Steve Browning at the local chapter around mid-morning. Over the course of the day, Motz attended the football game, drank alcoholic beverages, went to dinner and purchased a case of beer to drink when he returned to the local chapter. When Motz returned to the local chapter between 8:30 p.m. and 9:30 p.m., he put his case of beer in a cooler in a private room, C–17, located on the third floor.

Johnson first encountered Motz, an acquaintance and former co-employee at the L.S. Ayres Department Store, in the third floor hallway of the local chapter at approximately 12:30 a.m. Johnson talked with Motz for approximately 15 minutes until she went downstairs to look for her friends and Loudermilk. After searching unsuccessfully for her friends and Loudermilk for approximately ½ hour, Johnson returned upstairs and again met Motz, who offered to give her a ride home if she was willing to wait awhile. He stated that he would take her home later because he did not want to drive under the influence of alcoholic beverages. Over the next few hours, Johnson, Motz, Browning and several others sat in room C–17 talking, drinking alcoholic beverages, including beer and peach schnapps, and listening to music. At approximately 3:45 a.m., Johnson left room C–17 to search for Loudermilk. When she was unable to find him, she returned to room C–17, saw that Browning was leaving the party and again asked Motz for a ride home. Motz again stated that he needed time because he did not want to drive under the influence of alcoholic beverages. At that time, everyone except Johnson and Motz had left room C–17. At approximately 4:00 a.m., Motz locked the door to room C–17, turned up the volume on the stereo and sexually assaulted Johnson.

On February 20, 1992, Motz pled guilty to Sexual Battery,[1] a Class D felony.[2] Thereafter, on July 1, 1992, Johnson filed a complaint against the local chapter, the national fraternity and Motz for damages.[3] In her complaint, Johnson alleged that the local chapter was liable under two theories. First, she alleged that the local chapter had negligently performed its common law duty to provide protection for her safety and second, that it was liable under Indiana's Dram Shop Act[4] because it knowingly served alcoholic beverages to Motz when he was visibly intoxicated. The complaint also alleged that the national fraternity was liable under a negligence theory because it assumed a duty to provide protection for Johnson's safety and because it breached that duty by failing to take adequate steps to protect her from Motz's criminal attack.

On November 14, 1993, the local chapter filed its motion for summary judgment arguing that it was not liable under a theory of negligence because it had no duty to protect Johnson against Motz's criminal attack as a matter of law because there was no evidence that it either knew or could have foreseen that Motz was likely to sexually assault Johnson or that it had any opportunity to prevent Motz from assaulting Johnson. Moreover, the local chapter maintained that it was not liable as a matter of law under Indiana's Dram Shop Act because there was no evidence that it provided alcohol to Motz while having actual knowledge that he was visibly intoxicated.

On November 19, 1993, the national fraternity filed its motion for summary judgment alleging that it was not liable under a theory of negligence because it did not owe Johnson a duty to protect her from being sexually assaulted by Motz. Specifically, the national fraternity argued that it did not own or control either the Beta Alpha Chapter or the fraternity house where the sexual assault occurred and it had not assumed a duty to protect Johnson from the sexual assault.

Following a February 14, 1994, hearing, the trial court issued an order on March 3, 1994, denying both the local chapter's and the national fraternity's motions for summary judgment. In denying the local chapter's motion for summary judgment, the trial court believed our decision in *Bearman v. University of Notre Dame* (1983), Ind.App., 453 N.E.2d 1196, to be controlling and held that the local chapter owed a duty to its guests, including Johnson, who attended its Homecoming party. The court also determined that a question of fact existed, precluding the entry of summary judgment, as to whether the local chapter breached its duty to Johnson and whether such a breach

---

1. IND.CODE § 35–42–4–8.

2. Pursuant to the plea agreement, Motz's conviction was reduced to a Class A misdemeanor at the time of his sentencing.

3. Motz is not a party to this appeal.

4. IND.CODE § 7.1–5–10–15.5.

was the proximate cause of Johnson's injuries. In denying the national fraternity's motion for summary judgment, the trial court held that, pursuant to our holding in *Ember v. B.F.D.*[5] (1986), Ind.App., 490 N.E.2d 764, a question of fact remained as to whether the national fraternity gratuitously assumed a duty and, if so, the scope of that duty.

On April 14, 1994, pursuant to Ind.Appellate Rule 4(B)(6), the appellants brought this interlocutory appeal challenging the trial court's March 3 order. We accepted jurisdiction of their interlocutory appeal on June 14, 1994.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Sizemore v. Arnold* (1995), Ind.App., 647 N.E.2d 697, 698. On appeal from the denial of a motion for summary judgment, we apply the same standard applicable in the trial court. *Northern Indiana Public Service Co. v. Sell* (1992), Ind.App., 597 N.E.2d 329, 330, *trans. denied.* That is, summary judgment shall be granted if the designated evidence shows that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Sizemore,* 647 N.E.2d at 698–99. The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, 596, *trans. denied.*

### II. Negligence

■ To recover under a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. Because it is dispositive in both instances, we address only the first requisite element relating to the existence of a duty.

■ The existence of a duty is a question of law for the court to determine. *Webb,* 575 N.E.2d at 995. It is axiomatic that the conduct of a person will give rise to an action for negligence only if the person owed a duty to the plaintiff to conform his actions to the standard of care. *Bearman,* 453 N.E.2d at 1198. Our supreme court has held that in order for a court to impose a duty at common law, it must balance the following factors:

(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.

*Id.*

### A. Local Chapter

■ The local chapter argues that the trial court erred in denying its motion for summary judgment. Specifically, the local chapter maintains that it cannot be held liable under a common law theory of negligence because it had no duty to protect Johnson from being sexually assaulted by Motz in that there was no evidence that it either knew or could have foreseen that Motz was likely to sexually assault Johnson or that it had any opportunity to prevent Motz from sexually assaulting Johnson. Johnson counters that the local chapter, as a landowner, had a duty to exercise reasonable care for the safety of its social guests, including Johnson, who came onto its premises with an actual invitation.

In the present case, the trial court relied on *Bearman,* 453 N.E.2d 1196, in holding that the local chapter owed a common law duty to Johnson. In *Bearman,* Christenna Bearman was injured in the parking lot of the Notre Dame football stadium when an intoxicated man unintentionally fell into her from behind, knocking her to the ground, as

---

**5.** Although the *Ember* decision was partially modified at 521 N.E.2d 981, gratuitous assumption of a duty remained a potential basis of liability.

she was returning to her car after the game. Following the incident, Bearman sued the University of Notre Dame for damages alleging that she was a business invitee of Notre Dame, and therefore, Notre Dame owed her a duty to protect her from injury caused by the acts of other persons on the premises. At trial, after the close of all evidence, the trial court granted Notre Dame's motion for judgment on the evidence finding that Bearman had failed to show that Notre Dame owed her a duty of reasonable care. On appeal, we reversed and held that Notre Dame did have a duty to take reasonable precautions to protect those who attended the football games from injury caused by the acts of third persons. *Id.* at 1198.

Although *Bearman* is insightful, we cannot agree with the trial court that it is controlling in the present case. Unlike in *Bearman,* where Mrs. Bearman was injured when an intoxicated man unintentionally fell into her from behind, in the present case, Motz's sexual assault was an act of volition, and the injuries inflicted on Johnson were the intended result of his deliberate design, even though he may have been intoxicated. Therefore, we believe our decision in *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383, is controlling.

In *Welch,* Mary Elizabeth Welch, a patron at the Railroad Crossing tavern, was severely injured when a fellow patron viciously attacked her with a knife in the area behind the tavern. Following the assault, Welch commenced an action against the tavern to recover damages for her injuries alleging first that the tavern had negligently performed its common law duty to protect her from the criminal attack and, second, that the tavern's statutory violations of Indiana's Dram Shop Act constituted negligence per se. At trial, at the close of her case-in-chief, the trial court granted the tavern's motion for judgment on the evidence. On appeal, we affirmed the judgment in favor of the tavern and held that the tavern did not have a common law duty to protect Welch from an unforeseeable, unexpected, and spontaneous criminal assault. *Id.* at 387, 389. We stated:

> [T]here is generally no duty on the part of a tavern owner to protect even his own

patrons from the criminal acts of third persons. *Nakis v. Amabile* (1981), 103 Ill.App.3d. 840, 59 Ill.Dec. 498, 431 N.E.2d 1255. A duty to anticipate and to take steps to protect against a criminal act arises only when the *facts of a particular case* make it reasonably foreseeable that a criminal act is likely to occur. *Id., accord McFarlin [v. Hall* (1980), 127 Ariz. 220, 619 P.2d 729] *supra; Taggart v. Bitzenhofer* (1972) 35 Ohio App.2d 23, 299 N.E.2d 901; *Padulo v. Schneider* (1952), 346 Ill. App. 454, 105 N.E.2d 115; 65 C.J.S. *Negligence* § 63(127).

*Id.* at 388. We further surmised that:

> [f]or the proprietor of a tavern to be held liable for a criminal assault under a common law theory of negligence, the proprietor must have been alerted to the likelihood of harm by the prior actions of the assailant, either on the occasion of the injury or on previous occasions. *See* Annot., 70 A.L.R.2d 628, § 18 (1960); *see also* Annot., 97 A.L.R.3d 528 (1980); Annot., 65 A.L.R.2d 923, § 5 (1959).

*Id.*

In addition, we held that the tavern's violations of Indiana's Dram Shop Act did constitute negligence per se, but this negligence was not the proximate cause of Welch's injuries because the attack was not shown to be a reasonably foreseeable result of the violations. *Id.* at 389. We reasoned that although Welch presented evidence that her assailant was intoxicated, that he was served additional drinks after he was visibly intoxicated, and that he was intoxicated when he committed the crime, she presented no evidence of whether the attack was caused by or resulted from his intoxication. *Id.* at 390. We stated:

> We are aware of no cases holding that people are likely to commit murder or criminal assaults merely because they become intoxicated, i.e., that such acts are a natural, probable, and foreseeable result of intoxication alone.

*Id.* at 391. We noted that:

> an assault is an act of volition, and the injuries inflicted are the intended result of

the assailant's deliberate design, even though he may be intoxicated.

*Id.* at 390.

Here, similar to *Welch*, there is no evidence that the local chapter was alerted to the likelihood of harm by the prior actions of Motz, either on the occasion of the injury or on previous occasions. Browning, a high school friend and fraternity brother of Motz, testified that he had never known Motz to be physically aggressive to anyone, especially not towards women. R. at 269, 733. Johnson herself testified that in all of her previous encounters with Motz, his behavior had never been threatening. R. at 127. Johnson further testified that on the night of the attack she did not perceive Motz's behavior prior to the attack as threatening. R. at 139–40, 150. Moreover, Johnson has not presented any evidence of any previous sexual assaults at the local chapter, by either Motz or members of his fraternity, that would have alerted the local chapter to the likelihood of harm in the instant case. Although Johnson may be able to point to a pattern of drinking, and even alcohol abuse, at the local chapter, there is no evidence of any past instances of sexual assault at that local chapter which would have made Motz's sexual assault foreseeable. Thus, because it was not reasonably foreseeable that Motz was likely to sexually assault Johnson, the local chapter did not owe a duty to Johnson to anticipate and to take steps to protect her against Motz's criminal acts.

Regardless, Johnson counters that the local chapter, as a landowner, had a duty to exercise reasonable care for the safety of its social guests, including Johnson, who came onto its premises with an actual invitation. In support, she cites the *Restatement (Second) of Torts* § 318, which states:

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person so as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control.

*Kinsey v. Bray* (1992), Ind.App., 596 N.E.2d 938, 940, *trans. denied.*

In response, the local chapter concedes that Johnson was a social guest, but argues that that relationship alone does not create a duty because the harm must also be foreseeable. We agree. In the present case, because the record reveals that it was not reasonably foreseeable that Motz was likely to sexually assault Johnson, the fact that Johnson was a social guest, by itself, did not give rise to a duty from the local chapter to Johnson to anticipate a sexual assault and to take steps to protect her against Motz's criminal acts.

Also, as in *Welch*, Motz's criminal assault was not a natural and probable result of his alleged intoxication. Although Johnson presented evidence that Motz may have been intoxicated on the night of the assault and that he may have been intoxicated when he committed the assault, she presented no evidence that the attack was caused by or resulted from his intoxication. Motz's sexual assault was an act of volition, and the injuries inflicted were the intended result of his deliberate design, even though he may have been intoxicated. Thus, we find that Motz's alleged intoxication was not the proximate cause of Johnson's injuries because the attack was not shown to be a reasonably foreseeable result of the intoxication.

### B. National Fraternity

■ The national fraternity contends that the trial court erred in denying its motion for summary judgment because it did not owe Johnson a duty to protect her from being sexually assaulted by Motz. Specifically, the national fraternity asserts that: 1) it did not own or control either the Beta Alpha Chapter or the Beta Alpha fraternity house where the sexual assault occurred, 2) it functioned only as an educational and support organization to discourage date rape and the illegal and irresponsible consumption of alcohol, and

3) it had not assumed a duty to protect Johnson from the sexual assault.

In the present case, the trial court held that, pursuant to our holding in *Ember*, 490 N.E.2d 764, a question of fact remained, precluding the entry of summary judgment, as to whether the national fraternity gratuitously assumed a duty and, if so, the scope of that duty. In *Ember*, Roger Ember was attacked and beaten across the street from O'Sullivan's Italian Pub. Prior to the attack, the Pub had received complaints from nearby residents and the local neighborhood association due to problems attributed to the Pub's patrons, including complaints of excessive noise, criminal activity and violence both inside and outside of the Pub. In response to these complaints, the Pub distributed a flyer instructing neighborhood residents to call the Pub "if something in the neighborhood is disturbing you or someone's property and you wish for O'Sullivan's to try to correct the problem ... even if it does not pertain to us...." *Id.* at 767. The Pub also assured neighborhood residents that they would have a police officer on duty in the evenings to walk around and "check the parking lots in the area and so forth for any kind of thing that was happening." *Id.* Although the trial court granted the Pub's motion for summary judgment, we reversed finding that material issues of fact remained as to whether the Pub gratuitously assumed a duty to patrol the adjacent areas and the scope of the duty assumed. The national fraternity argues that *Ember* is distinguishable from the facts of the present case and urges us to adopt our holding in *Foster v. Purdue University Chapter, the Beta Mu of Beta Theta Pi* (1991), Ind.App., 567 N.E.2d 865, *trans. denied.* We agree that *Ember* is distinguishable.

In *Foster*, Joseph Foster, a freshman member of the Beta Theta Pi fraternity, was rendered a quadriplegic when he climbed atop a brick wall during a party at his chapter's fraternity house and dove headfirst onto a waterslide located eight to ten feet below the wall. *Id.* at 867. Following the accident, Foster filed a complaint against the Beta Theta Pi fraternity (national fraternity), among others, alleging that the national fra-

ternity assumed the duty of controlling an alcohol problem within its local chapters. *Id.* at 872. Specifically, he alleged that the national fraternity had discouraged alcohol abuse, including their publication of an advisory pamphlet. *Id.* Further, Foster argued that the national fraternity had sanctioned at least one fraternity for alcohol related problems and had conducted an inspection of the Purdue Chapter. *Id.* The national fraternity responded by arguing that it functions only as a resource and support services organization offering guidelines to local chapters. *Id.* It further argued that its sole enforcement power is that of suspending or revoking charters and it had no power to implement specific procedures within the chapters. *Id.* The trial court granted the national fraternity's motion for summary judgment and we affirmed stating:

> We conclude that only one inference can be drawn from the fraternity's "advisory" communications to the Purdue Chapter concerning alcohol use. The fraternity did not gratuitously assume a duty to control alcohol consumption by the Purdue Chapter members.

*Id.*

In the present case, the national fraternity distributed several different posters around the fraternity house and around campus stating for example that "[i]t may come as a surprise, but one of the most active organizations in the fight against alcohol abuse, date rape and hazing is a fraternity." R. at 435. The poster further stated that:

> Delta Tau Delta is dedicated to dealing with many of the critical issues facing today's college students. Alcohol abuse, date rape and hazing simply cannot be tolerated.
>
> As a result, we have instituted a comprehensive alcohol abuse education program among our 124 chapters.
>
> We abhor date rape and believe in the worth of every individual, and have committed ourselves to the development of moral character.

R. at 435. We do not find that the national fraternity assumed a duty to protect Johnson from Motz's criminal attack when it distributed these posters. Unlike the flyer distribut-

ed by the Pub in *Ember*, the national fraternity's poster did not instruct college students to contact the national fraternity if something at the fraternity was disturbing them or they wished for the national fraternity to correct the problem, even if it does not pertain to them. Moreover, the national fraternity's poster did not assure college students that it would have a police officer on duty in the evenings at the local chapter to walk around and maintain safety.

Similar to the national fraternity in *Foster*, the national fraternity in the present case served only as a resource and service organization for the local chapter, offering information and guidance to local chapters, including information on date rape and alcohol use. Further, the national fraternity's sole enforcement powers in the present case are expelling members and withholding or suspending local chapter charters. Thus, relying on *Foster*, we find that the fraternity did not gratuitously assume a duty to provide protection for Johnson's safety. We note that to hold otherwise would discourage the national fraternity from disseminating information discouraging alcohol abuse and rape.

### III. Dram Shop Liability

In her complaint, Johnson alleged that the local chapter was liable under Indiana's Dram Shop Act because it knowingly served alcoholic beverages to Motz when he was visibly intoxicated. In its motion for summary judgment, the local chapter alleged that it was not liable under Indiana's Dram Shop Act because there was no evidence that it provided alcohol to Motz while having actual knowledge that he was visibly intoxicated. The trial court denied the local chapter's motion for summary judgment on March 3, 1994.

■ Under Indiana law, civil liability may be imposed under the Dram Shop Act for injuries to third parties caused by violations of IND.CODE § 7.1–5–7–8, which makes it unlawful for any person to "sell, barter, exchange, provide, or furnish" an alcoholic beverage to a minor, and/or IND.CODE § 7.1–5–10–15, which makes it unlawful for any person to "sell, barter, deliver, or give away" an alcoholic beverage to an intoxicated person. *Rauck v. Hawn* (1990), Ind.App., 564 N.E.2d 334, 337. A person, however, may not be held civilly liable under the Act for "furnishing" an alcoholic beverage to a person, including a minor, unless the person who furnishes the alcohol had actual knowledge that the person served was visibly intoxicated. *Thompson v. Ferdinand Sesquicentennial Comm., Inc.* (1994), Ind.App., 637 N.E.2d 178, 180.

■ In the present case, Johnson contends that a material issue of fact remains, which precludes the entry of summary judgment, as to whether the local chapter furnished alcoholic beverages to Motz and whether Motz was visibly intoxicated. We disagree. The record reveals that Motz was drinking the cans of beer that he purchased earlier in the evening. Although Johnson contends that she saw Motz drinking out of a plastic cup similar to those being provided at the party, there is no evidence that the beverage in the plastic cup was beer or that it had been provided by the fraternity. Moreover, if the cup did contain beer that was provided by the fraternity, that is no evidence that it was provided to Motz with actual knowledge that he was visibly intoxicated. Thus, there is no basis on which to conclude that the local fraternity violated Indiana's Dram Shop Act.

■ Moreover, as we discussed in Section II(A), even if we were to assume that the local chapter violated Indiana's Dram Shop Act, Motz's intoxication was not the proximate cause of Motz's criminal assault. Although Johnson presented evidence that Motz may have been intoxicated on the night of the assault and that he may have been intoxicated when he committed the assault, she presented no evidence that the attack was caused by or resulted from his intoxication. Thus, we find that the trial court erred in denying the local fraternity's motion for summary judgment.

### CONCLUSION

In conclusion, we find that the trial court erred in denying the local chapter's and the

national fraternity's motions for summary judgment.

Judgment reversed.

SHARPNACK, C.J., and ROBERTSON, J. concur.