**L.W., Appellant–Plaintiff,**

**v.**

**WESTERN GOLF ASSOCIATION, and Evans Scholars Foundation, Appellees–Defendants.**

No. 79A02–9507–CV–393.

Court of Appeals of Indiana.

Jan. 29, 1997.

Michael J. Stapleton, Cheryl M. Knodle, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for Appellant–Plaintiff.

Bryce H. Bennett, Jr., Laura K. Taylor, Stephen M. Wagner, Riley, Bennett & Egloff, Indianapolis, for Appellees–Defendants.

## OPINION

SULLIVAN, Judge.

Appellant L.W. appeals the trial court's April 17, 1995 order granting summary judgment in favor of defendants Western Golf Association (WGA) and Evans Scholars Foundation (ESF).

We affirm.

The sole question for review is whether the trial court erred in determining that WGA and ESF breached no duty to protect L.W. from the criminal act of a third person.

The unfortunate facts relevant to this appeal are essentially undisputed. L.W., a 20–year–old sophomore at Purdue University at the time of the incident, was raped during the early hours of October 16, 1992 by Brent Jenkins (Jenkins), an 18–year–old freshman. Jenkins was subsequently convicted of rape and incarcerated. He was a party to the present lawsuit below but is not an active party to this appeal.

On the night the rape occurred, L.W. had visited a local college bar where she became "very intoxicated." After her friends picked her up at the bar, L.W. was assisted to her room by several of the other male residents, including Jenkins. She was laid on her bed, fully-clothed, and the other residents left her room. At some point later, Jenkins entered L.W.'s unlocked room, removed her clothes and raped her while she was unconscious.

L.W. and Jenkins were, at the time, both Evans Scholars. As required by their scholarships, they lived in the Evans Scholars House at Purdue University, which is owned by the ESF, the charitable arm of the WGA. The Evans Scholars house at Purdue first began coed living in the mid–1980's. The male and female members lived on the same floor during the period that L.W. and Jenkins lived there; there was no separation between the male and female rooms (apart from the fact that they were separate rooms).

Before the October 16, 1996 incident, ESF had received no complaints about Jenkins. In fact, L.W. does not assert that she or anyone else had complained that they felt threatened by him. L.W. herself said that she did not know him well and merely felt uncomfortable around him.

What L.W. does assert is that there were other problems and complaints regarding coed living. She says that there were "complaints of abuse by females and a fight between a male and female member." Appellant's Brief at 5.[1] L.W. also asserts incidents

---

1. The record does not reflect that there were any official or unofficial complaints, only unsubstan-

of name-calling and male-dominated abusive behavior directed at female members.

The existence of a duty is a question of law for the court to determine. *Webb v. Jarvis* (1991) Ind., 575 N.E.2d 992, *reh'g denied.* However, whether or not the defendant owes a duty to the plaintiff depends upon the relationship between the two parties. Once the court determines that a duty exists, the duty is to exercise reasonable care under the circumstances—the duty never changes. However, the standard of conduct required to fulfill that duty varies according to the particular circumstances. *Stump v. Indiana Equip. Co., Inc.* (1992) Ind.App., 601 N.E.2d 398, 402, *trans. denied.* Here the question is whether or not WGA or ESF's duty to L.W. extended to protect her from the actions of a third person—Jenkins. In *Welch v. Railroad Crossing, Inc.* (1986) Ind. App., 488 N.E.2d 383 we held that "[a] duty to anticipate and to take steps to protect against a criminal act arises only when the *facts of a particular case* make it reasonably foreseeable that a criminal act is likely to occur." *Id.* at 388; *see also, Vernon v. Kroger Co.* (1995) Ind.App., 654 N.E.2d 24. L.W. has failed to show that there is a genuine issue of fact as to whether the criminal attack was reasonably foreseeable by WGA or ESF.

The facts here are remarkably similar to those in *Motz v. Johnson* (1995) Ind.App., 651 N.E.2d 1163, *trans. granted.*[2] In *Motz,* the victim, Tracey Johnson (Johnson) was sexually assaulted by Joseph Motz (Motz). Johnson brought suit against her attacker, the fraternity in which the attack occurred (Delta Tau Delta), and the fraternity's national organization. Johnson, however, pointed to no evidence that the local chapter was alerted to the likelihood of harm by Motz's prior actions. "Moreover, Johnson [did] not present[ ] any evidence of any previous sexual assaults at the local chapter, by

either Motz or members of his fraternity. . . ." *Id.* at 1168.

ESF and WGA argue that, in order for parties to be liable for the criminal actions of others, the defendant "must have been alerted to the likelihood of harm by the prior actions of the assailant, . . ." Appellee's Brief at 11. L.W. counters that there are situations in which a landowner should have reason to know that an individual is likely to be injured as a result of conditions present. In *Bearman v. University of Notre Dame* (1983) Ind.App., 453 N.E.2d 1196, this court extended the foreseeability of injury to include a plaintiff who was injured when an intoxicated person fell on her at a football tailgate party. This court said that "even though there was no showing that the University had reason to know of the particular danger posed by the drunk . . ., it had reason to know that some people will become intoxicated and pose a general threat to [others]." *Id.* at 1198.

L.W. asks us to apply the reasoning of *Bearman* to the case before us. We decline. Instead, we hold that in order to find a party liable for not preventing the result of the criminal acts of another, the defendant must have been alerted to prior actions of wrongdoers which would give rise to a likelihood of future harm. There is quite a difference between holding that it is foreseeable that a drunk person will fall down, as in *Bearman,* and holding that it is foreseeable that an individual will commit rape. As we noted in *Welch,* it is the purposeful manner "in which the harm was caused that distinguishes [between an intentional assault and an automobile collision caused by an intoxicated driver]." *Welch, supra* 488 N.E.2d at 390.

As noted above, L.W. has not demonstrated that WGA or ESF had *any* knowledge or indication that Jenkins had a propensity toward violence or sexual assault. She further

tiated observations by L.W. that two incidents took place.

**2.** We note that the Indiana Supreme Court granted transfer January 4, 1996, and that under Appellate Rule 11(B)(3) the court of appeals decision is vacated and held for naught. However,

inasmuch as our Supreme Court has not yet written to the issue, we have no reason to reject the reasoning as set forth in *Motz.* Accordingly, we allude to it not as precedential, but as reflective of the current state of the law, as drawn from the authorities cited therein.

failed to show that there were incidents of sexual assault or violence in the Evans Scholar house. Therefore, her argument must fail.

Under Indiana law, a party may act for the benefit of another and by so acting, that party must exercise care and skill in discharging that duty. *Nalls v. Blank* (1991) Ind.App., 571 N.E.2d 1321. If WGA or ESF had undertaken specific security measures to insure L.W.'s safety, they may be held liable if they did so negligently. L.W. asserts that WGA and ESF recognized the need for security at the house and "had undertaken some security measures, although they were vague and nonspecific [sic]." Appellant's Br. at 18. We hold that by merely providing door locks and outdoor lighting, neither ESF nor WGA undertook to guarantee L.W.'s safety from attacks by a co-resident of the house.

Finally, L.W. argues that WGA and ESF should have provided better security by adding deadbolt locks to the room, providing a housemother, or separating the male and female residents. As to the first contention, this court notes that the lock already in place on L.W.'s door was not even used. Therefore, we are hard-pressed to understand how an unlocked deadbolt would have improved the situation.

As to providing the students with a housemother, we are inclined to agree with the logic of this court as enunciated in *Campbell v. Board of Trustees of Wabash College* (1986) Ind.App., 495 N.E.2d 227, *trans. denied:*

> College students and fraternity members are not children. Save for a very few legal exceptions, they are adult citizens, ready, able, and willing to be responsible for their own actions. Colleges and fraternities are not expected to assume a role anything

akin to *in loco parentis* or a general insurer.

*Id.* at 232 (footnote omitted). WGA and ESF fulfilled their obligation to L.W. by providing her with a safe place to live. A landlord is not required to police the activities of the tenants unless there is something that should alert the landlord to the necessity. As noted above, there was nothing that did or should have alerted WGA or ESF to the propensity for sexual assault in the Evans Scholars house by Jenkins or by anyone else.

Finally, we cannot say that the law imposes upon ESF or WGA the duty to separate students by their gender. In *Tanja H. v. Regents of the Univ. of Cal.* (1991), 228 Cal. App.3d 434, 278 Cal.Rptr. 918, the California Court of Appeals noted that no court had imposed upon a university the duty to separate students based upon their gender. *Id.* 278 Cal.Rptr. at 922. We agree. Although consensual sexual intercourse may arguably be a foreseeable result of placing male and female students on the same floor in the same housing unit, rape is not. The incident of sexual assault removes this case from the category of foreseeable events because of the criminality of the act. The landlord certainly does have a duty in the case before us to refrain from doing anything which would facilitate criminal acts; but, placing male and female students on the same floor does not do so.

The decision of the trial court is affirmed.

KIRSCH and CHEZEM, JJ., concur.