**Kevin ELLIS, Appellant–Plaintiff,**

**v.**

**LUXBURY HOTELS, INC.,**
**Appellee–Defendant,**

**and**

**Michael Wallin, Appellee–Third Party Defendant.**

No. 01A02–9504–CV–215.

Court of Appeals of Indiana.

June 20, 1996.

Robert Owen Vegeler, Beers, Mallers, Backs & Salin, Fort Wayne, for appellant.

Donald G. Orzeske, Donald K. Broad, Osborn Hiner Lisher & Orzeske, P.C., Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Kevin Ellis appeals from a grant of summary judgment in favor of Luxbury Hotels, Inc. (the Hotel) in Ellis's negligence action against the Hotel. Upon appeal, Ellis presents the following restated issues for review:

I. Did the trial court err in determining that Luxbury Hotels owed no duty to Ellis?

II. Did the trial court err in determining that Luxbury Hotels was not liable to Ellis under a theory of implied contract to insure Ellis's privacy, safety, and protection while at the hotel?

We affirm.

The facts favorable to Ellis, the nonmoving party, are that on the evening of December 15, 1989, Claire Wallin registered as a guest at the Luxbury Hotel in Fort Wayne, Indiana. Sometime thereafter, Ellis visited Wallin in her hotel room at her invitation. At approximately 7:00 a.m. the next morning, James Wallin, Claire's estranged husband, entered the lobby of the hotel and told the desk clerk, Theresa Gates, that he was Claire's brother. James claimed that Claire had telephoned to inform him that she was having car trouble and asked for his assistance. Wallin told Gates that he had forgotten Claire's room number. According to Gates, Wallin was not agitated, nor was there any indication that he would cause trouble or act violently. Gates told James the number of the room in which Claire was staying. Wallin went to the room, eventually gained entry, and attacked Ellis.

Ellis filed a complaint for damages against the Hotel, claiming in Count I that the Hotel was negligent in furnishing Wallin with Claire's room number. In Count II, Ellis asserted that the Hotel had violated Ellis's rights of privacy and peaceful possession, resulting in injury. The Hotel submitted a motion for summary judgment on the element of duty, arguing that the Hotel owed no duty to Ellis, the breach of which had resulted in Ellis's injuries. The trial court granted the motion, ruling as a matter of law that "Luxbury [Hotels] owed no duty to the plaintiff, Kevin Ellis." *Record* at 62. Oral argument was conducted before this court on December 4, 1995.[1]

When reviewing a grant of summary judgment, our task is the same as that of the trial court. *Greathouse v. Armstrong* (1993), Ind.,

1. We note that on September 5, 1995, the Hotel filed with this court Appellee's Submission of Additional Authorities. On September 29, 1995, Ellis filed in response a document entitled "Appellant's, Kevin Ellis, Response to Appellee's, Luxbury Hotels, Inc., Submission of Additional Authority". On October 5, 1995, the Hotel filed Appellee's Verified Petition to Strike Appellant's Response to Submission of Additional Authority. We agree with the reasoning cited in support of the Hotel's motion to strike and hereby grant the Appellee's October 5 petition to strike.

616 N.E.2d 364. We examine, in a light most favorable to the non-moving party, the designated portions of the pleadings, affidavits, answers to interrogatories, responses to requests for admissions, and depositions, to determine whether there exist issues of material fact that were designated to the trial court, and whether the movant is entitled to judgment as a matter of law. *Hilburt v. Town of Markleville* (1995), Ind.App., 649 N.E.2d 1036, *trans. denied.*

## I.

Ellis contends that the trial court erred in concluding that Luxbury Hotels owed no duty to Ellis. Ellis asserts that the issue of an innkeeper's duty to safeguard its guests from foreseeable unlawful acts, generally, and to keep confidential a guest's room number, specifically,[2] are issues of first impression in Indiana.

In order to recover damages in a negligence action, a plaintiff must establish a duty owed by the defendant to conform its conduct to the standard of care necessitated by the relationship between the plaintiff and the defendant, the breach of which was the proximate cause of an injury suffered by the plaintiff. *Greathouse, supra.* The question of duty is a question of law for the court to decide. *Motz v. Johnson* (1995), Ind.App., 651 N.E.2d 1163. The duty, when found to exist, never changes; it is the duty to exercise reasonable care under the circumstances. *Stump v. Indiana Equipment Co., Inc.* (1992), Ind.App., 601 N.E.2d 398, *trans. denied.* However, the standard of conduct required to conform to the duty varies and is dependent upon the circumstances of each particular case. *Id.*

Ellis contends that Luxbury Hotels had a duty to provide adequate security to protect its guests. Citing *Muex v. Hindel Bowling Lanes, Inc.* (1992), Ind.App., 596 N.E.2d 263, Ellis contends that whether the security measures undertaken by a business to protect its guests were reasonable under the circumstances is a question of fact not appropriate for summary disposition. The *Muex* court stated:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

*Id.* at 267. Although *Muex* does enunciate a general duty on the part of businesses to provide security for their patrons, such does not necessarily convert the question of what specific duties flow from this general duty into a factual question not appropriately decided by summary judgment. Taken to its logical conclusion, this view would render the question of specific duty in such cases universally beyond the reach of summary disposition. We conclude that the existence of a specific duty to do or refrain from doing a particular act, like the general duty from which it flows, may be a question of law for the court to decide. This is especially so where, as here, the specific duty in question is more than a mere ministerial feature of a general duty. In such cases, we apply the traditional duty analysis.

When determining whether the law recognizes an obligation on the part of a particular defendant to conform his conduct to a specific standard for the benefit of the plaintiff, we consider the following factors: 1) The relationship between the parties; 2) the reasonable foreseeability of harm to the person who was injured; and 3) public policy concerns. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992. Ellis contended at oral argument before this

---

**2.** It should be noted that Ellis also addresses the issue of whether Luxbury Hotels owed him a duty in view of the fact that he was visiting a guest of the hotel, but was not a paying guest of the hotel. Ellis cites several cases from other jurisdictions in support of the proposition that an innkeeper's duty to such a person is the same as the duty to a paying guest. Luxbury Hotels does not address the matter, and in view of our disposition of the duty issue, the question of whether a lesser duty is owed to the unregistered guest of a registered guest is irrelevant.

court that the duty question presented in his complaint is whether the Hotel in this case, and innkeepers in general, have a duty to protect guests' anonymity. Specifically, Ellis contends that the issue is whether the Hotel owed a duty to Ellis to protect his privacy by not disclosing to Michael Wallin the number of the room in which Claire was staying. Ellis's framing of the issue misses the mark. Ellis was injured as a result of an arguably criminal attack by a third party. We conclude, therefore, that the question is whether the Hotel owed a duty to Ellis to protect him from criminal assaults from third parties and, if so, whether that duty was breached in the instant case.

We agree with the trial court that *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383 is controlling in the instant case. In *Welch,* a woman patron left a foodserving tavern and was attacked in the parking lot by another patron, who had become intoxicated while in the tavern. The victim filed suit against the tavern for breach of the duty to protect her from assault by a drunken patron. The court held, however, that the tavern had no commonlaw duty to protect the woman from the criminal attack because the attack was not foreseeable.

The *Welch* court noted that a tavern has a common-law duty to protect others from foreseeable intentional or negligent acts of its patrons. Yet, the court noted, taverns are not insurers of the safety of even their own patrons. The court determined that the inquiry in that case was whether the tavern owed a duty to protect others from the criminal acts of third persons. The *Welch* court emphasized the importance of the foreseeability factor in such cases, as well as the fact-sensitive nature of that determination in a particular case: "A duty to anticipate and to take steps to protect against a criminal act arises only when the *facts of a particular case* make it reasonably foreseeable that a criminal act is likely to occur." *Welch, supra,* at 388 [emphasis in original]. Thus, the court concluded, the question was whether the facts of that particular case gave rise to a duty to protect Welch.

Because Ellis was injured as a result of a criminal attack by Michael Wallin, we conclude that the existence of a duty must be determined by application of the *Welch* analysis. Therefore, the question of whether Luxbury Hotels owed a duty to protect Ellis from Michael Wallin's criminal attack also depends upon the element of foreseeability. Luxbury Hotels correctly contends that there is no designated evidence of record to support the inference that the attack by Michael Wallin was foreseeable. The undisputed evidence reflects that Michael Wallin gave no sign of agitation or perturbation when he spoke with the desk clerk and obtained Claire's room number. Moreover, Michael Wallin's ruse was not improbable, certainly not to such a degree as to put a reasonably prudent person on notice that his motives for obtaining Claire's room number might be unwholesome.

Ellis seeks to distinguish *Welch* upon the following grounds:

First, Luxbury takes upon itself the affirmative duty to give a private room to its hotel guests and their guests occupy a *private* space where no one else can enter. Second, there was no evidence to indicate that the presence of a hotel guest was published or made known to any third person. Third, common sense would dictate that a right of privacy exists and that the hotel acted directly to destroy that right of privacy. Fourth, it is axiomatic that a person who wanders in to a hotel attempting to locate a guest, who has not given any authority for revelation of such location, does not have to be brandishing a weapon and shouting obscenities and seeking revenge in order to put a reasonable desk person on notice that a criminal act or intrusion of privacy by force is foreseeable.

Appellant's Brief at 18 [emphasis in original]. Ellis seeks to redirect the focus in the instant case from the Hotel's duty to protect its patrons from criminal attacks to the Hotel's duty to maintain its guests' anonymity. Either way, however, Ellis's claim fails because of the nature of the injury-producing incident, i.e., a criminal attack. The *Welch* court determined, as does this court in the instant case, that the unforeseeable criminal nature of the attack gave rise to the legal conclusion

that no duty existed. Under Ellis's theory of the case, on the other hand, the fatally deficient element in Ellis's cause of action would be that of proximate cause. Even if the Hotel had a duty to maintain its guests' anonymity, and if the duty was breached, that breach was not the proximate cause of the attack.

> [I]t is well established that, when between an alleged act of negligence and the occurrence of an injury, there intervenes the wilful, malicious and criminal act of a third party which causes the injury and which could not reasonably have been foreseen by the allegedly negligent party, the causal chain between the negligence and the injury is broken.

*Welch, supra,* at 390 (quoting *Mathes' Estate v. Ireland* (1981), Ind.App., 419 N.E.2d 782, 785). Proximate cause in such cases, like the existence of a duty, depends upon the foreseeability of the criminal attack upon the facts of that particular case. *Welch, supra.* As we have previously determined, the record discloses no facts by which a reasonable person could infer that the Hotel should have known that Michael Wallin would attack Claire or her guest upon learning of her location. Ellis's argument that the attack was foreseeable is premised upon the view that innkeepers should be generally aware of the probability of attack whenever a third party seeks information about one of its guests. This approach is impermissibly general; it fails to focus upon the facts of the particular case in question. We are guided in this regard by the *Welch* court, which also refused to find a duty springing from a generalized evaluation of the circumstances, from which a general duty is then extracted. The court indicated that the existence of duty must be determined on a case-by-case basis:

> We have found *no case* in which a court imposed a common law duty to protect against an attack on the theory that intentional criminal acts are foreseeable merely from the fact that alcohol is sold on the premises or that such acts are foreseeable solely from the fact that the assailant was served beyond the point of intoxication. There must be more because the foreseeability of a criminal act is determined by reference to the proprietor's *knowledge* of

the actor's *behavior.* For the proprietor of a tavern to be held liable for a criminal assault under a common law theory of negligence, the proprietor must have been alerted to the likelihood of harm by the prior actions of the assailant, either on the occasion of the injury or on previous occasions.

*Welch, supra,* at 388 [emphasis in original].

In summary, the duty element underlying Ellis's negligence lawsuit is the duty to protect against criminal assaults from third parties. Because the attack by Michael Wallin was not foreseeable, the Hotel had no duty to Ellis in that regard. *Welch, supra.* Even if there were a duty based upon the failure to protect Claire's anonymity, the breach of that duty was not the proximate cause of Ellis's injuries because Michael Wallin's criminal attack upon Ellis was not foreseeable. *Id.*

## II.

Ellis contends that the trial court erred in concluding as a matter of law that Ellis's claim of breach of implied contract to maintain its guests' privacy and to provide protection while on hotel premises was without merit.

The existence of the duties arising by implied contract to which Ellis alludes is questionable. Ellis's brief assumes the existence of the implied contract without explaining its origin. Ellis states:

> Ellis, through the registered guest, had an implied contract with Luxbury to maintain his privacy. Money was paid for that privacy and security and equity requires that Luxbury maintain such obligation....

> Claire Wallen [sic] and, accordingly, her invited guest, Ellis, had a reasonable expectation that their privacy would be safeguarded by Luxbury while in the hotel room. Ellis clearly intended that Luxbury would not act in a manner so as to violate this right of privacy. Luxbury's negligent action, giving the location and identity of a registered guest without first obtaining the guests's authorization, breached the implied contract.

Appellant's Brief at 24. Ellis cites no authority for the existence of an implied contract between an innkeeper and a registered guest that forbids the innkeeper from divulging the room number of the guest to a third party, the breach of which results in an invasion of the guest's privacy, nor does our research reveal any. Therefore, in order to prevail on the theory of invasion of privacy, Ellis's complaint must satisfy the traditional requirements for such a claim.

Indiana recognizes the general tort of invasion of privacy, which is divided into four distinct strands:

1) unreasonable intrusion upon the seclusion of another;

2) appropriation of the other's name or likeness;

3) unreasonable publicity given to the other's private life; and

4) publicity that unreasonably places the other in a false light before the public.

*Near East Side Community Org. v. Hair* (1990), Ind.App., 555 N.E.2d 1324, 1334–35.

Ellis does not specify which of the four strands are applicable to his claim. The Hotel argues that the only strand arguably applicable is the one involving unreasonable publicity given to another's private life. This is based upon the allegation in Ellis's complaint that the desk clerk "published" Claire's room number in giving it to Michael Wallin.

In *Doe v. Methodist Hosp.* (1995), Ind. App., 639 N.E.2d 683, the court held that the disclosure of a fact about a person's private life to only two co-workers did not, as a matter of law, constitute the "publicity" required to sustain an action for invasion of privacy. We agree with the *Doe* court that the following principle is applicable in such cases:

> The Restatement (Second) of Torts, synthesizing the cases to date, adopted a rule requiring proof by the plaintiff of "publicity" rather than publication as that term is used in the law of defamation-i.e., publication to a single third person. Publicity was arbitrarily defined as communication to the "public" at large, or to so many persons that the matter must be regarded

as substantially certain to become one of public knowledge . . .

> (I)t is not an invasion . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

*Doe, supra,* at 685 (quoting D.A. Elder, *The Law of Privacy* (1991) § 3:3 at 155, 156) (citations omitted). In the instant case, the desk clerk gave Claire's room number only to Michael Wallin. Revealing Claire's room number to only one person was insufficient "publicity" to support a claim for the tort of invasion of privacy. *Id.*

In his reply brief, Ellis argues that the first strand of the tort of invasion of privacy, intrusion, is arguably applicable. "Invasion of privacy by intrusion consists of an intrusion upon the plaintiff's physical solitude or seclusion, either as to his person or to his private affairs or concerns." *Watters v. Dinn* (1994), Ind.App., 633 N.E.2d 280, 290, *trans. denied.* To rise to the level of tortious conduct, "the intrusion must be something which would be offensive or objectionable to a reasonable person." *Id.* A claim of tortious intrusion in the instant case may not be based upon the mere giving of Claire's room number because we have previously determined that the common law of Indiana does not recognize a duty on the part of innkeepers to maintain secrecy in such matters. The Hotel provided Claire's room number to a person claiming to be her brother, and not unreasonably so. The information was provided in order to allow the man to render assistance to Claire. Therefore, the Hotel's motivation for doing so was pure. This "intrusion", if it can accurately be described as such, is not of a character that supports a claim of tortious intrusion.

The trial court did not err in entering summary judgment in favor of Luxbury Hotel, Inc. In view of our affirmance of the court's judgment, we need not address the questions of punitive damages and the viability of the Hotel's third-party action against Michael Wallin.

Judgment affirmed.

RUCKER, J., concurs in result with separate opinion.

KIRSCH, J., dissents with separate opinion.

RUCKER, Judge, concurring.

I agree that the trial court's entry of summary judgment should be affirmed. However I do so for reasons different than those expressed by Judge Friedlander in the lead opinion. Specifically, the lead opinion examines the foreseeability component of duty, determines the harm was not foreseeable, and then concludes no duty exists. In my view there are at least two problems with this approach. First, foreseeability is but one of three competing factors that must be weighed and evaluated to determine the existence of a duty. *See Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991) *reh'g denied,* (To determine the existence of a common law duty we must balance: 1) the relationship between the parties, 2) the foreseeability of harm, and 3) public policy concerns). Even assuming that the harm is not foreseeable, unless the other two components are evaluated, then the finding of no duty rests on an incomplete analysis. Second, and more important, there is no need to engage in the balancing process in the case before us because the duty a business owner owes its invitees already has been established. "Proprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct." *Muex v. Hindel Bowling Lanes, Inc.,* 596 N.E.2d 263, 266 (Ind.Ct.App.1992) *citing Ember v. B.F.D., Inc.,* 490 N.E.2d 764, 769 (Ind.Ct.App.1986). Essentially, where relevant case authority dictates the existence of a duty then we may not, by examining the relationship between the parties, foreseeability of harm, and public policy concerns, reach a contrary conclusion and determine that no duty exists. In short, balancing the *Webb* competing factors is reserved for instances where the existence of a duty has not been previously determined or articulated. As applied to the instant case, it is clear to me that Hotel owed Ellis a duty to use reasonable care to protect him from injury caused by other patrons and guests on

Hotel's premises. The critical issue is whether Hotel breached its duty of reasonable care.

Although breach of duty is usually a matter left to the trier of fact, it can be decided as a matter of law where the facts are undisputed and lead to but a single inference or conclusion. *Richter v. Klink Trucking, Inc.,* 599 N.E.2d 223 (Ind.Ct.App.1992) *trans. denied.* Ellis contends that the duty question presented here is whether Hotel owed him a duty to protect his privacy by not disclosing Claire's room number to Michael Wallin. However, as I have indicated the duty question is already settled. The question Ellis presents is more appropriately cast not as an issue of duty, but rather breach of duty. In other words, did Hotel breach its duty of care to protect Ellis by disclosing Claire's room number to Wallin? I think not. For there to be a breach of duty there must be a causal relationship between the act done and the duty imposed. The act of disclosing a hotel guest's room number, without more, bears no relationship to a hotel's duty to protect the guest's visitor from harm. Although under different facts, the disclosure of a guest's room number may result in a breach of duty, such facts are not present in this case. Thus, I agree the trial court's grant of summary judgment should be affirmed, but only because the undisputed facts show that as a matter of law Hotel breached no duty owed to Ellis.

KIRSCH, Judge, dissenting.

I respectfully dissent.

It is fundamental that the tort of negligence consists of three elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and, 3) injury to the plaintiff proximately caused by that breach.

The duty question, however, is not easily answered. As recognized by our supreme court,

The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that

the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated.... But it should be recognized that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.

. . . .

Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.

Prosser & Keeton on Torts § 53, at 357–59 (5th ed.1984) (footnotes omitted) (quoted in *Gariup Construction Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind.1988)).

In response to the difficulties present in a duty analysis, including the vast number of factors available for consideration, our supreme court undertook to formulate a workable approach to making the determination. *See Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991). The court in *Webb* concluded that three factors are to be balanced when deciding whether a duty should be imposed in Indiana negligence cases: 1) the relationship between the parties; 2) the reasonable foreseeability of harm to the person injured; and, 3) public policy concerns. *Id.* at 995.

The supreme court succeeded in its effort to provide a definitive formula for analyzing the duty element in negligence cases, and succinctly explained why each factor weighed against imposing a duty "under the circumstances" of the case before the court. *Id.* at 993. Despite the court's detailed analysis of the three factors in the context of the issue before it, i.e., whether a physician owes a duty to a third person injured by the physician's patient as a result of treatment, the court's opinion provided little analytical guidance for applying the factors under different circumstances.

The *Webb* formula fails to distinguish between the foreseeability component of duty and the foreseeability component of proximate cause. They are different. Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident occurs. According to the American Law Institute, foreseeability for proximate cause purposes is determined from a perspective that is "after the event and looking back from the harm to the actor's negligent conduct." Restatement (Second) of Torts § 435(2) (1965). As stated in Indiana, "[a] negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, *in light of the circumstances,* should reasonably *have been* foreseen or anticipated." *City of Portage v. Lindbloom*, 655 N.E.2d 84, 86 (Ind.Ct.App.1995) (emphasis added). Thus, when determining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred.

By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a *lesser* inquiry; otherwise, it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, *Booker, Inc. v. Morrill*, 639 N.E.2d 358, 363 (Ind.Ct.App.1994), while duty is usually a legal question for the court. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App. 1994). As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis which looks to the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.

Here, Judge Friedlander in his lead opinion concludes that there is no duty because "there is no designated evidence of record to support the inference that the [incident] was foreseeable." *Opinion,* p. 1265. This conclusion looks to the facts of the actual occurrence, thus adopting the hindsight approach appropriate to the foreseeability determination under proximate cause, not duty.

In his separate concurring opinion, Judge Rucker states that the duty owed here is that set forth in *Muex v. Hindel Bowling Lanes, Inc.,* 596 N.E.2d 263, 266 (Ind.Ct.App.1992). I agree. I respectfully disagree, however, with his conclusion that there is no breach of that duty as a matter of law. I believe that the question of breach, like that of proximate cause, is a question of fact to be left to the jury.

For such reasons, I respectfully dissent.