Cynthia A. GOLDSBERRY,
Appellant–Plaintiff,

v.

Eddye M. GRUBBS, Michael Richardson, John Doe, General Telephone Company of Indiana, Inc., State of Indiana/ Indiana Highway Department, Toyota Motor Distributors, Inc., and Toyota Motor Corporation, Appellees–Defendants.

No. 50A05–9505–CV–186.

Court of Appeals of Indiana.

Nov. 13, 1996.

Douglas A. Mulvaney, Stutsman & Mulvaney, Elkhart, for Appellant–Plaintiff.

R. Kent Rowe, R. Kent Rowe, III, Rowe & Rowe, South Bend, for General Telephone Company of Indiana, Inc.

## OPINION

KIRSCH, Judge.

Cynthia Goldsberry appeals the entry of summary judgment in favor of appellee-defendant General Telephone Company of Indiana, Inc. (GTE) on Goldsberry's claim for negligence arising out of an automobile accident in which Goldsberry suffered personal injury. The issue on appeal is whether GTE owed Goldsberry a duty of reasonable care in connection with its placement of a telephone pole near a roadway.[1]

We reverse.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of November 23, 1985, Goldsberry was traveling as a passenger in a 1979 Toyota Corolla operated by Eddye Grubbs. Grubbs was driving the car west on State Road 119 in Elkhart County when she lost control of the car. The car left the traveled portion of the highway, traveled down an embankment, and collided with telephone pole 371 owned by GTE. The expert opinions of accident reconstructionists differed as to whether the car flipped over before striking telephone pole 371 or whether the car first struck the pole which caused it to flip over. The flipping of the car caused its roof to collapse which crushed Goldsberry's C7 vertebrae and rendered her a quadriplegic.

Goldsberry sued a number of defendants to recover for her injuries. She sued GTE, alleging that it was negligent in its installation and placement of telephone pole 371. GTE moved for summary judgment on the ground that it owed no duty to Goldsberry upon which to base a negligence action. The trial court granted GTE's motion; Goldsberry appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a decision on a summary judgment motion, this court applies the same standard as the trial court. *Ramirez v. American Family Mut. Ins. Co.,* 652 N.E.2d 511, 514 (Ind.Ct.App.1995). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied* (1995). All facts and reasonable inferences must be construed against the moving party. *Sizemore v. Arnold,* 647 N.E.2d 697, 699 (Ind.Ct.App.1995). We will affirm a summary judgment ruling on any legal theory which is consistent with the designated evidence in the record. *Crist v. K–Mart Corp.,* 653 N.E.2d 140, 142 (Ind.Ct.App.1995), *trans. denied* (1996).

The tort of negligence consists of three elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and, 3) injury to the plaintiff proximately caused by that breach. *Wickey v. Sparks,* 642 N.E.2d at 265. To prevail on a motion for summary judgment in a negligence case, the defendant must establish that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Colen v. Pride Vending Serv.,* 654 N.E.2d 1159, 1162 (Ind.Ct.App.1995), *trans. denied* (1996); *Moore v. Sitzmark Corp.,* 555 N.E.2d 1305, 1307 (Ind.Ct.App.1990). Regardless of which element or elements the defendant argues is negated, the goal of the analysis is to establish parameters for deciding as a legal matter which cases will survive in the system and which cases will perish.

### II. Duty

The duty element of negligence is by far the most frequently argued ground upon which defendants seek summary judgment. Presumably, the frequency with which this element is argued arises from the general premise that the existence of a duty, owed by the defendant to the plaintiff, is usually a legal question to be answered by the court. *Wickey,* 642 N.E.2d at 265. Because summary judgment requires a defendant to

---

1. Goldsberry also presents the issues of whether questions of fact exist as to breach and proximate cause. Given our resolution of the duty issue, we need not reach these other two.

prove its entitlement to judgment as a matter of law, the legal question of duty is a logical basis upon which to seek such judgment.

The duty question, however, is not easily answered. As recognized by our supreme court,

"The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated.... But it should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.

. . . .

"Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists."

*Gariup Construction Co. v. Foster,* 519 N.E.2d 1224, 1227 (Ind.1988) (quoting Prosser & Keeton on Torts § 53, at 357–59 (5th ed. 1984) (footnotes omitted)).

■ In response to the difficulties present in a duty analysis, including the vast number of factors available for consideration, our supreme court undertook to formulate a workable approach to making the determination. *See Webb v. Jarvis,* 575 N.E.2d 992 (Ind. 1991). The court in *Webb* "now conclude[d]" that three factors are to be balanced when deciding whether a duty should be imposed in Indiana negligence cases: 1) the relationship between the parties; 2) the reasonable foreseeability of harm to the person injured; and, 3) public policy concerns. *Id.* at 995.

The supreme court succeeded in its effort to provide a definitive formula for analyzing the duty element in negligence cases, and succinctly explained why each factor weighed against imposing a duty "under the circumstances" of the case before the court. *Id.* at 993. Despite the court's detailed analysis of the three factors in the context of the issue before it, i.e., whether a physician owes a duty to a third person injured by the physician's patient as a result of treatment, the court provided little analytical guidance for applying the factors under different circumstances.

This lack of guidance has led this court to use inconsistent applications of the *Webb* formula when deciding whether a utility company owes a duty to members of the motoring public when the vehicle in which they are riding or driving leaves the traveled portion of a roadway and strikes a pole owned by the utility company. In *Northern Indiana Public Serv. Co. v. Sell,* 597 N.E.2d 329 (Ind.Ct. App.1992), *trans. denied* (1993), the plaintiff was a passenger in a car whose driver fell asleep at the wheel. The car crossed the center line and opposing lane of traffic, went down an embankment, and struck a utility pole. We employed the *Webb* three-part test and concluded that the utility company was entitled to summary judgment because all three factors weighed against imposing a duty. In *State v. Cornelius,* 637 N.E.2d 195 (Ind.Ct.App.1994), *trans. denied,* the plaintiff was a motorcyclist traveling on a state highway. The motorcyclist was struck by a motorist who negligently entered the highway from an intersecting secondary road. The impact caused the plaintiff and his motorcycle to slide across the roadway and collide with a utility pole that was located in a traffic island on the northeast corner of the intersection. As in *Sell,* we employed the *Webb* test, but found that summary judgment was inappropriate because the relationship and public policy components weighed in favor of imposing a duty, and questions of fact existed as to the foreseeability factor. *Cornelius,* 637 N.E.2d at 201.

■ In our view, the source of the inconsistent application of the *Webb* test is the

failure to distinguish between the foreseeability component of the duty analysis and the foreseeability component of proximate cause. They are different. Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident occurs. According to the American Law Institute, foreseeability for proximate cause purposes is determined from a perspective that is "after the event and looking back from the harm to the actor's negligent conduct." Restatement (Second) of Torts § 435(2) (1965). As stated in Indiana, "[a] negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, *in light of the circumstances*, should reasonably *have been* foreseen or anticipated." *City of Portage v. Lindbloom*, 655 N.E.2d 84, 86 (Ind.Ct.App.1995) (emphasis added), *trans. denied* (1996). Thus, when determining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred.

By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, *Booker, Inc. v. Morrill*, 639 N.E.2d 358, 363 (Ind.Ct. App.1994), while duty is usually a legal question for the court. *Wickey*, 642 N.E.2d at 265. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.[2]

*See generally Ellis v. Luxbury Hotels, Inc.*, 666 N.E.2d 1262 (Ind.Ct.App.1996) (Kirsch, J. dissenting). As recently recognized by our supreme court, "[t]o a great extent, duties are defined by the foreseeability of relevant harms." *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 250 (Ind.1996).

The dissent looks to the facts of the particular accident in which Goldsberry was injured, including the fact that both Goldsberry and Grubbs were intoxicated and the fact that Grubbs fell asleep while driving, to find that no duty existed on GTE's part. Despite the dissent's approach, we remain convinced that while the facts of a particular occurrence are relevant when considering whether a breach of a duty occurred and whether that breach was the proximate cause of the plaintiff's injuries, such facts are simply not relevant to the determination of whether a duty existed. To look to the facts of a particular occurrence when deciding the duty question would subsume the entire law of negligence, i.e., duty, breach, and proximate cause, into the duty question.

### A. Foreseeability

■ Looking at the type of plaintiff and harm involved in the present case, we conclude that both were foreseeable within the duty context. In this, we disagree with the analysis employed in *Sell*. That analysis involved a detailed examination of the actual harm and the actual plaintiff involved in the case to determine whether the foreseeability component of duty existed. 597 N.E.2d at 333–34. As we have explained, such an examination is more appropriately included in the foreseeability component of proximate cause. *Sell* itself states that "[a]lthough in some cases it would be reasonably foreseeable that motorists (or their occupants) would leave the traveled portion of a road and strike a utility pole, there are no facts in the present case susceptible of that inference." 597 N.E.2d at 334. In *Cornelius*, a panel of this court also relied on the actual occurrence to determine the existence of

---

2. Of course, foreseeability in the duty analysis is but one of three factors to be balanced. A finding that foreseeability weighs against imposing a duty does not end the analysis because the relationship and public policy factors may weigh in

favor of imposing a duty. Conversely, a finding that foreseeability weighs in favor of imposing a duty does not necessarily mean a duty will be imposed because the relationship and public policy factors may weigh against imposing a duty.

foreseeability in the duty context. There, the panel concluded that unlike *Sell,* the facts before the court were susceptible of the inference that it was foreseeable that a motorist would leave the highway and strike the utility pole. 637 N.E.2d at 199. We believe that the proper conclusion is that regardless of the facts that actually occur, it is foreseeable that motorists (or their occupants) will leave the traveled portion of a road and strike utility poles set and maintained along that road. Thus, the foreseeability factor weighs in favor of imposing a duty.

## B. Relationship

■ In *Sell,* the court recognized that the utility had "somewhat" of a statutory relationship with the passenger in a car that left the traveled portion of the roadway. 597 N.E.2d at 332. The court, however, determined that the relationship was "limited" to legitimate users of the highway, which did not include users riding in a car that had crossed the center line and opposing lane of traffic. *Id.* The *Cornelius* court rejected this limitation, stating that "whether the highway was being used as it was intended to be used is a more appropriate consideration under the foreseeability factor [of the duty analysis]." 637 N.E.2d at 199. The *Cornelius* court also determined that a relationship between the parties existed by virtue of a statute which requires telephone companies to set and maintain their poles along public roads, highways and waters of this state "in such manner as not to incommode the public in the use of such roads, highways and waters[.]" IC 8–20–1–28. The court continued, stating that this statute "[c]learly … evidences a relationship between the utility erecting poles along the highway and the public which uses the roads." 637 N.E.2d at 199. More recently, we have relied on the reasoning in *Cornelius* to find a relationship, and also a duty, to exist between a contractor performing work on a highway and a member of the public using the highway. *Gilliam v. Contractors United, Inc.,* 648 N.E.2d 1236 (Ind.Ct.App.1995), *trans. denied.* We conclude, like the court in *Cornelius,* that GTE, who erected telephone poles along State Road 119, had a relationship with Goldsberry, who was a member of the public traveling along that road, which was sufficient to warrant imposing a duty in the present case.

## C. Public Policy

Again, we must disagree with the *Sell* court in its analysis of the public policy component of the duty inquiry. In effect, the court determined that the utility did not breach its duty when it placed the pole, thus it was against public policy to impose a duty on the utility given the facts of the case. For to do so, according to the court, would be to impose absolute liability on utilities for all car/utility pole accidents. 597 N.E.2d at 334. While we agree that it would be contrary to public policy to impose liability on a defendant who did not breach a duty owed, we cannot agree that the lack of breach precludes imposing a duty in the first instance.

■ Public policy is not offended by imposing a duty on telephone companies who place fixed objects along the roadway. Such objects pose a danger of harm to members of the traveling public who leave the traveled portion of the roadway. Requiring a telephone company to act reasonably and prudently when placing their poles so as not to make such harm unreasonable, is consistent with principles of public policy.

Based upon the foregoing, we hold that a telephone company is held to a duty to the motoring public to exercise reasonable care when placing telephone poles along Indiana highways. *See Gilliam,* 648 N.E.2d at 1240 n. 2 (duty is a general one of reasonable care owed to the motoring public). Accordingly, GTE was not entitled to summary judgment on the duty issue.

In reaching a different conclusion, the dissent relies on the *Sell* court's statement that imposing a duty on a utility company under the circumstances there would be tantamount to imposing absolute liability on all utilities for car/utility pole accidents. We cannot agree. The duty question is but one of three elements that must exist before liability is imposed. The fact that a duty is imposed does not necessarily mean that the utility company will be liable because the breach of the duty and proximate cause of the injury

resulting from such breach must also be established.

 Here, however, the duty issue was the sole theory GTE raised in the trial court. On the basis of the evidence designated by both parties, it could be argued that alternative theories support a summary judgment in GTE's favor. The use of such an alternative theory to affirm summary judgment would be inappropriate given our supreme court's pronouncement of the burden of proof imposed on the respective parties to a summary judgment motion: "Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Jarboe v. Landmark Community Newspapers*, 644 N.E.2d 118, 123 (Ind.1994). The court specifically rejected the federal standard[3] that requires the non-moving party "to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof." *Jarboe*, 644 N.E.2d at 123 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 272).

Even though Goldsberry designated evidence and presented argument to the trial court on the elements of breach of duty and proximate cause, she was not required to do so because GTE limited its argument to the duty issue. We cannot assume that Goldsberry would not have presented different or additional evidence had GTE presented and argued an alternative theory to the trial court. For this reason we limit our decision to the duty issue and express no opinion on whether GTE is entitled to judgment as a matter of law on any of the other elements of Goldsberry's claim.

For these reasons, we disagree with the dissent's position that by "removing consideration of all but the most general of facts from the duty analysis and allocating such consideration instead to the proximate cause analysis, [we have] restructured summary judgment ... practically into nonexistence." *Op.* at 484. Our analysis simply emphasizes that

the duty question is to remain separate from the questions of breach and proximate cause. It may well be that even though a duty is found to exist, a defendant may demonstrate the absence of breach or proximate cause, and, thus, the defendant's entitlement to judgment as a matter of law. Indeed, in the instant case, GTE may be able to do so. To allow cases such as this to perish under the guise of a duty analysis as the dissent suggests, however, would relieve the defendant from satisfying its burden, as the moving party, of demonstrating the absence of a genuine issue of fact as to a determinative issue.

Reversed.

ROBERTSON, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the majority's determination that summary judgment in favor of GTE was erroneous. In reversing summary judgment, the majority expressly rejects *Northern Indiana Pub. Serv. Co. v. Sell*, 597 N.E.2d 329, which clearly compels the opposite result. This rejection is based upon the majority's conclusions that the holdings in *Sell* and *State v. Cornelius*, 637 N.E.2d 195, cannot be reconciled with one another and that *Cornelius* is the better view. I believe that *Sell* was correctly decided. Moreover, I believe that both *Sell* and *Cornelius* support the grant of summary judgment.

In my view, the majority's analysis is incorrect in that it applies differing standards when analyzing the foreseeability components of the questions of duty and proximate cause, respectively. Specifically, I disagree with the majority's conclusion that because both duty and proximate cause incorporate a foreseeability component, by logical deduction the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause.

---

3. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The difference between the two, in the majority's view, is that foreseeability in the context of duty is a lesser inquiry, i.e., "a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Slip op.* at 7. Applying the more general analysis, the majority concludes that the foreseeability component of duty is satisfied in the instant case because it is foreseeable that motorists will leave the traveled portion of the road and strike utility poles. The majority's approach does not consider any but the most general of facts of the occurrence. I believe that the *Sell* analysis is preferable because, among other things, it *does* take into account the undisputed facts of the occurrence when considering the question of duty.

Citing *Webb v. Jarvis*, 575 N.E.2d 992 (Ind.1991), the *Sell* panel noted that the existence of duty is determined after considering three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm; (3) and public policy concerns. I conclude that all three factors indicate that no duty existed in the instant case.

While there is a relationship between users of public roads and utility companies that locate poles along public roadways, I agree that "this relationship is limited to those members of the public using state highways as they were intended to be used." *Sell*, 597 N.E.2d at 332. The majority, however, rejects this principle, apparently because it takes into account the facts of the particular occurrence, which in this context include the cause of the vehicle leaving the roadway. It is upon this basis that the majority rejects *Sell* and approves of *Cornelius*. I believe, however, that *Sell* and *Cornelius* do not conflict in this regard.

The *Cornelius* panel did not reject this aspect of the *Sell* analysis, but instead held

that the plaintiff in *Cornelius* was using the roads as intended. The *Cornelius* panel also held that the foreseeability of a collision with the utility pole in question was determined after a consideration of certain factors pertaining to that particular pole.[4] In so doing, the court impliedly acknowledged that in *Sell* there were no facts susceptible of the inference that it was reasonably foreseeable that a motorist would leave the roadway and strike a pole.

*Cornelius* and *Sell* were superficially similar in that the plaintiffs in both cases struck utility poles after leaving the roadway. While the panels reached different results regarding the existence of a duty, such was premised in each case upon an examination of the undisputed facts before the court. The *Sell* panel noted that the plaintiff left the roadway because he fell asleep and concluded that such did not constitute an intended use of the road and thus no relationship existed. The *Cornelius* panel disagreed with *Sell* only in that it considered the "intended use" inquiry to be a component of the foreseeability analysis, not the relationship analysis. It did not, however, reject the concept of examining the particular facts of an occurrence in deciding the duty question. Irrespective of where such analysis should be placed, the *Cornelius* panel noted that the plaintiff left the roadway as a result of having been struck by another vehicle and concluded that he was using the roadway as it was intended to be used when he left the roadway. Therefore, in both *Sell* and *Cornelius*, the court undertook a detailed examination of the undisputed facts of the particular occurrence, including the reason that the vehicle left the road, in determining the existence of a duty.

Applying this aspect of both *Cornelius* and *Sell* to the instant case, I proceed to an examination of the undisputed facts of this occurrence. Goldsberry and Grubbs had

4. The court stated:
 Here, the utility pole was located in a traffic island surrounded by roadway, the curb surrounding the island had been removed, and the pole was only one to two feet from the shoulder of S.R. 67. Further, the traffic island in which the pole was located was at an intersection of a state highway and a secondary road. The jury could conclude that it is foreseeable

that collisions will occur in an intersection and that one of the motor vehicles will leave the traveled portion of the highway. Given the proximity of the pole to the intersection, the jury could likewise conclude that it is foreseeable that a motor vehicle could strike the pole. A question of fact to be resolved by the jury exists.
*Cornelius*, 637 N.E.2d at 199.

been visiting friends and drinking beer during the evening before the accident. While driving home at approximately 3:30 a.m. the next morning, Grubbs fell asleep and the car left the roadway, striking a utility pole. At the time of the accident both Grubbs and Goldsberry were intoxicated. Subsequent tests revealed that Grubbs had a blood-alcohol content of .14% and Goldsberry's blood-alcohol content was .15%. Following the accident, Grubbs was arrested and charged with operating a motor vehicle while intoxicated.

## I. Relationship

The *Sell* analysis compels the conclusion that once the car left the road as a result of Grubbs's intoxication and falling asleep, the road was no longer being used as intended and Grubbs and Goldsberry no longer had a relationship with GTE that would give rise to a duty.

## II. Foreseeability

While *Cornelius* would relocate the consideration of intended use to the foreseeability component of duty, there is no indication the *Cornelius* panel would have reached a different result on the ultimate question of duty. Presumably, the *Cornelius* panel would have concluded that driving off of the road as a result of intoxication and falling asleep would not have been sufficiently foreseeable to impose a duty upon GTE.

Under *Sell,* foreseeability is determined through examination of

the location of the pole, its proximity to the roadway, the configuration of the roadway, whether the utility company had notice of previous accidents at that location and whether as an alternative, a less dangerous location for the pole existed.

*Sell,* 597 N.E.2d at 333. The telephone pole in question was located beside a two-lane road that was approximately twenty-two feet wide. The pole was 7.2 feet from the edge of the pavement, was only 1.8 feet from the right-of-way line, and was located at the bottom of a drainage ditch that was 1.2 feet deep. The road was straight and level in the vicinity of the pole and the nearest intersection was more than 2500 feet away. The pole was installed in 1960 and since that time

there has been only one accident involving a vehicle and the pole. That accident occurred approximately nine months before the accident in the instant case, but there is no evidence that the previous accident was serious enough to cause property damage or personal injury.

Such circumstances were not of a character to put GTE on notice that the pole was in a dangerous place and should be located elsewhere. Moreover, the pole could have been moved only 1.8 feet further from the road. On the facts of this case, the conclusion of the *Sell* panel with respect to foreseeability is equally applicable here:

Although in some cases it would be reasonably foreseeable that motorists (or their occupants) would leave the traveled portion of a road and strike a utility pole, there are no facts in the present case susceptible of that inference. Therefore, the factor of foreseeability also militates against imposing a duty on [GTE].

*Id.* at 334.

## III. Public Policy

*Sell* analyzed the public policy element as follows:

Public policy considerations also weigh heavily against finding a duty in this case. Under state law, NIPSCO has the qualified right to locate its utility poles along the highways of this state. IC § 8–20–1–28. Indiana has long recognized the substantial public interest that is served by the grant and exercise of this right. [Citation omitted.] The Sells do not contend that NIPSCO was negligent for exercising its right, nor do they specify in what portion of the highway right-of-way NIPSCO could have placed the pole without being negligent. As mentioned above, NIPSCO could not have relocated the pole in question more than seven inches further from the highway without the pole being at least partially on private property.

To hold NIPSCO to a duty in this situation would be to impose absolute liability upon utilities for such accidents, for there are undoubtedly thousands of poles similarly installed in this state. We are not prepared to say that a utility is the insurer

of all persons injured by utility poles that otherwise pose no unreasonable risk of harm.

*Id.* The *Cornelius* panel did not disapprove of the foregoing analysis, but concluded that the facts of *Cornelius* dictated the opposite result.[5]

In the instant case, GTE exercised a qualified statutory right in placing the poles along the road and, because of the right-of-way limitation, could only have moved the pole 1.8 feet further from the road even had it chosen to do so. For the reasons set forth above in *Sell,* I believe that public policy considerations counsel against imposition of a duty in this case.

In summary, I believe that the foreseeability and public policy components of the duty analysis, under both *Sell* and *Cornelius,* dictate the conclusion that GTE did not owe a duty to Goldsberry upon the undisputed facts of this case. Additionally, the relationship component is lacking under the *Sell* analysis.

Finally, I feel compelled to express my concern about what I consider to be a likely ramification of the majority's holding. As previously stated, duty is generally a determination to be made by the court, while proximate cause is a jury question. In removing consideration of all but the most general facts from the duty analysis and allocating such consideration instead to the proximate cause analysis, the court has restructured summary judgment in such cases practically into nonexistence.

In the instant case, for example, the only thing that Goldsberry is required to establish in order to get her case to a jury is that she was a motorist or an occupant of a motor vehicle when she was injured. It is irrelevant to the majority's determination that Goldsberry and Grubbs were intoxicated, or that Grubbs admittedly fell asleep while driving. Yet, it cannot seriously be disputed that the car initially left the road and the accident occurred as the result of a combination of these two factors. By precluding courts from taking such facts into account and restricting them to the single inquiry of

whether the plaintiff was a motorist or an occupant, it cannot be doubted that today's decision will render summary judgment practically unavailable any time an accident involves a telephone pole. The *Sell* panel was correct; such is tantamount to imposing absolute liability upon utility companies.

I agree with the majority that our goal in formulating and implementing a duty analysis "is to establish parameters for deciding as a legal matter which cases will survive in the system and which will perish." *Op.* at 477. I believe that under a proper duty analysis, in view of the intoxicated condition of the driver and occupant, the cause and nature of the accident, and the condition of the road in the vicinity of the accident, the instant case should perish. I would affirm the grant of summary judgment.

5. The distinguishing facts were that IPL (1) could relocate the pole, (2) had been requested to do so by the Highway Department, and (3) was planning to relocate the pole.