Jeremy S. **BRADTMILLER**,
Appellant–Plaintiff,

v.

**HUGHES PROPERTIES, INC.**,
Appellees–Defendant.

No. 02A03–9708–CV–297.

Court of Appeals of Indiana.

March 24, 1998.

Rehearing Denied July 1, 1998.

Theodore T. Storer, Patrick L. Proctor, Warsco, Brogan & Strunk, Fort Wayne, for Appellant–Plaintiff.

Mark W. Baeverstad, Brian L. England, Hunt Suedhoff, L.L.P., Fort Wayne, for Appellee–Defendant.

## OPINION

STATON, Judge.

Jeremy S. Bradtmiller appeals the entry of summary judgment in favor of Hughes Properties, Inc. ("Hughes"), owner of the apartment complex in which Bradtmiller lives. Bradtmiller claims that the trial court erred in ruling that Hughes owed no legal duty to protect Bradtmiller from criminal assault inflicted by third parties.

We affirm.

The facts favorable to Bradtmiller, the non-movant, demonstrate that he leased a one-bedroom apartment from Hughes and was assigned one parking space. On four occasions in April and May of 1994, Bradtmiller returned to his apartment and discovered another vehicle occupying his assigned space. Bradtmiller reported the incidents to a Hughes employee who told him she would "see what [she] could do," and "basically told [Bradtmiller] to find out whose vehicle it was" after which she would "try to do something." Record at 150, 153–54.

On May 30, 1994, Bradtmiller arrived home and found a white car occupying his assigned spot. This was the same car that had used his parking space on two previous occasions. Bradtmiller parked his vehicle immediately behind the car so that its driver could not leave. He approached two women in an adjacent apartment who informed him the car belonged to their boyfriends. However, the boyfriends had left with the keys, and the car could not be moved.

Bradtmiller began unloading his vehicle which was still blocking the white car. Approximately twenty minutes later, the boyfriends returned. An altercation ensued during which Bradtmiller was struck and repeatedly kicked in the head. The assailants both pled guilty to felony charges of assault.

Bradtmiller filed this action against Hughes, and Hughes moved for summary judgment, claiming that it had no duty to prevent the third party criminal assault inflicted on Bradtmiller. The trial court agreed and, in granting summary judgment in favor of Hughes, specifically found that Hughes had no duty to protect against the criminal act. Bradtmiller now appeals.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

The findings entered in this case were neither required nor prohibited in the summary judgment context. *See Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct.App.1993), *reh. denied.* Although specific findings aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

Bradtmiller's claim sounds in negligence, a tort consisting of three elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and 3) injury to the plaintiff proximately caused by that breach. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied.* The existence of a duty is a question of law for the court to determine. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), *reh.*

*denied.* While summary judgment is rarely appropriate in a negligence action, summary judgment may be suitable to determine the legal question of whether a duty exists. *Wickey,* 642 N.E.2d at 265. The Indiana Supreme Court has identified the following three factors that a court balances when determining whether to impose a duty at common law: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Webb,* 575 N.E.2d at 995. We consider each in turn.

 The relationship between Hughes and Bradtmiller was one of landlord and tenant. Bradtmiller contends that privity of contract between him and Hughes was sufficient to create a duty upon which he can predicate his negligence action. If a contract affirmatively evinces an intent to assume a duty, actionable negligence may be predicated upon the contractual duty. *Williams v. R.H. Marlin, Inc.,* 656 N.E.2d 1145, 1155 (Ind.Ct.App.1995). We have reviewed the contract between the parties as well as other designated material sent from Hughes to its tenants. A plain reading of the language in the documents leads us to conclude that none contains a promise, express or implied, to

support this cause of action.[1] Thus, we examine the duty element under the common law approach. While the relationship of the parties in this case is direct and strong, favoring imposition of a duty, it is only one factor we consider.

 Analyzing the foreseeability component of duty involves two considerations: whether the injured person was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable. *Wickey,* 642 N.E.2d at 267 (citing *Webb,* 575 N.E.2d at 997). The inquiry in this case focuses on the second of these. Bradtmiller insists that his complaints to management put Hughes on notice of a potential conflict over use of his parking space and therefore, a criminal attack on him was foreseeable. We cannot agree.

 Our courts have considered negligence claims involving a landlord and tenant where the resultant harm involved criminal activity. We have concluded that, generally, the landlord does not have a duty to protect a tenant from loss or injury due to the criminal actions of a third party but in an individual case, such a duty may arise. *Nalls v. Blank,* 571 N.E.2d 1321, 1323 (Ind.Ct.App. 1991).[2] We examined such a case in *Center*

---

1. The contract between Bradtmiller and Hughes does not name the designated parking space as part of the leased premises. It does include the following provision:

 The use or storage of Lessee's or any other person's motor vehicles (whether or not parked or being driven about the Building, the Apartment parking area or carport) shall at all times be at the sole risk of the Lessee. Should any employee or agent of Lessor assist the Lessee or take part in the parking, moving or handling of Lessee's or any other person's motor vehicle, such employee or agent in doing any of the foregoing shall be the agent of the Lessee and not of Lessor. . . .

 Record at 89. The contract further reads, "Lessor shall not be held responsible to Lessee for non-observance or violation of such rules or regulations by any person other than employees of Lessor." Record at 89.

 Bradtmiller's designated evidence also includes the "Hughes Properties Community Guidelines" which request that tenants refrain from using another person's parking area and warn that "[a]fter written notice, unauthorized vehicles will be removed at owner's expense. Some vehicles could be towed immediately." Record at 84. Hughes "encouraged" adherence

 to the guidelines, adopted to make residency "more enjoyable." Record at 85. Letters dated July 2, 1992 and February 9, 1994 confirmed that "[e]ach resident is responsible for his own guest parking. Violators are in danger of being towed at [the] owner's expense." Record at 175–76.

2. In *Nalls,* a tenant was assaulted by one who gained access to her apartment building and to the floor on which she lived with a key obtained by vandalizing a key retaining box affixed to the outside of the building. *Nalls,* 571 N.E.2d at 1322. The landlord had provided self-closing, self-locking steel doors both at the point of street access and at the point of access to the third floor. *Id.* at 1323. This court reversed the trial court's entry of summary judgment in favor of the landlord concluding, in pertinent part, that there was a question of material fact with regard to duty in that a trier of fact could reasonably infer that the defendant had undertaken to protect plaintiff against criminal attack by a third party. *Id.* at 1323–24. Unlike *Nalls,* the evidence in this case does not support a conclusion that, by its conduct, Hughes assumed a duty to use reasonable care to protect Bradtmiller from criminal attack.

*Management Corp. v. Bowman,* 526 N.E.2d 228 (Ind.Ct.App.1988), *trans. denied,* where the plaintiff brought suit against the owner and managing company of the apartment in which she lived, claiming that their master key policy allowed the landlord's employee to burglarize the plaintiff's apartment on two different occasions. *Id.* at 229. Although *Bowman* was decided before the Indiana Supreme Court's decision in *Webb v. Jarvis,* this court utilized a similar three factor analysis[3] and concluded that the second burglary was reasonably foreseeable. *Id.* at 230. We affirmed the trial court's finding of liability. *Id.* at 231.

Recently, we revisited the question of foreseeability of a criminal act in a landlord-tenant relationship. *L.W. v. Western Golf Ass'n,* 675 N.E.2d 760 (Ind.Ct.App.1997), *trans. pending.* In *L.W.,* an unconscious, intoxicated female student was raped by another student in a coed house where both students resided. *Id.* at 761. The student-tenant brought a negligence action against the owner of the house and its parent company. Our court defined the issue as whether the defendants' duty to the tenant extended to protect the tenant from the actions of a third person. *Id.* at 762. We noted that a duty to anticipate and take steps to protect against a criminal act arises only when it is reasonably foreseeable that a criminal act is likely to occur. *Id.* (citing *Welch v. Railroad Crossing, Inc.,* 488 N.E.2d 383, 388 (Ind.Ct. App.1986) and *Vernon v. Kroger Co.,* 654 N.E.2d 24 (Ind.Ct.App.1995)). Because the designated evidence did not support a determination that the sexual assault was foreseeable, we affirmed the trial court's grant of summary judgment in favor of the landlord. *Id.* at 762–63.

■ As both *Bowman* and *L.W.* demonstrate, under Indiana law, Hughes is liable to Bradtmiller only if Hughes should have anticipated the likelihood of the type of harm to Bradtmiller if its parking policies were not enforced. In this case, there are no facts susceptible of that inference. Bradtmiller argues that Hughes should have known that failure to secure his exclusive use of the assigned space would lead to an argument and that arguments often lead to assaults. We agree that Hughes had notice that the parking policy was being violated; thus, it was foreseeable that the failure to enforce the parking policy would lead to further violations. However, we cannot say that nonenforcement of the parking policy would foreseeably lead to the type of harm incurred here, a criminal act, so as to give rise to a duty to protect against that harm.

■ Regardless, Bradtmiller insists that by holding the criminal attack was not foreseeable, we are determining that the criminal attack was a superseding intervening act which concerns proximate cause, a jury question not appropriately decided by summary judgment. A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *Wolfe v. Stork RMS–Protecon, Inc.,* 683 N.E.2d 264, 268 (Ind.Ct.App.1997).

The Indiana Supreme Court has stated that the inquiry into foreseeability in the context of duty involves the same considerations as does foreseeability in the context of proximate cause. *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 517 (Ind.1994); *Webb,* 575 N.E.2d at 997; *see also Goldsberry v. Grubbs,* 672 N.E.2d 475, 479 (Ind.Ct. App.1996) (foreseeability component of duty requires general analysis of a broad type of plaintiff and harm and foreseeability component of proximate cause involves evaluating particular circumstances of incident after the incident occurs), *trans. pending.* Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. *Webb,* 575 N.E.2d at 997. Accordingly, the following language taken from the Restatement concerning "legal cause" is compatible with our case law

---

3. In determining the existence of a duty by a landlord to its tenant, the court considered: 1) the foreseeability of the injury; 2) the magnitude of the burden of guarding against the injury; and 3) the consequences of placing that burden upon the defendant. *Bowman,* 526 N.E.2d at 230 (citing *Morgan v. Dalton Management Co.,* 117 Ill. App.3d 815, 73 Ill.Dec. 313, 316, 454 N.E.2d 57, 60 (1983)).

interpreting foreseeability in the duty framework.

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

RESTATEMENT (SECOND) OF TORTS § 448, at 480 (1965); *see Wolfe*, 683 N.E.2d at 268 (where injuries could not, as matter of law, have been reasonably foreseeable due to unforeseeability of intervening, superseding cause, summary judgment may appropriately be entered in favor of defendant). Considering the particular facts of this case, foreseeability in the context of probable cause is also lacking.

We hold that, whether considering foreseeability in the framework of duty, or foreseeability in the framework of proximate cause, the designated evidence demonstrates that, as a matter of law, the required legal nexus between Hughes' failure to enforce its parking policy and the resultant criminal assault is absent.

The final factor to be balanced in determining the existence of a duty concerns public policy. Suffice it to say that, in this case, we find no overriding public policy considerations that weigh in favor of finding a duty.

In conclusion, the mere relationship of landlord and tenant did not impose upon Hughes a legal duty to protect Bradtmiller against the intentional criminal acts of unknown third parties. Foreseeability of the type of harm is required and, here, criminal activity was not a reasonably foreseeable risk. In weighing the *Webb v. Jarvis* considerations, we hold that Hughes did not owe Bradtmiller a duty to protect him from the injury which occurred. Absent a duty, there is no basis for recovery under a negligence theory. Thus, we affirm the trial court's grant of summary judgment in favor of Hughes.

Affirmed.

HOFFMAN, J., concurs.

GARRARD, J., concurs in result.